NO. 07-06-0160-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



NOVEMBER 16, 2006



______________________________




CARL BURFORD, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 299TH DISTRICT COURT OF TRAVIS COUNTY;



NO. D-1-DC-05-301203; HONORABLE JON WISSER, JUDGE



_______________________________



Before CAMPBELL and HANCOCK and PIRTLE, JJ.

ABATEMENT AND REMAND


 Following a plea of not guilty, Appellant Carl Burford was convicted by a jury of
possession of a controlled substance, enhanced, and sentenced to five years confinement. 
On October 19, 2006, Appellant's counsel filed an Anders brief in which he certified the
appeal is frivolous; however, said brief also contained what could be construed as an
arguable ground for appeal and a prayer for relief requesting the verdict be reversed and 
the case be remanded for further proceedings. Furthermore, counsel did not file a motion
to withdraw from a proceeding where Appellant's attorney has concluded the appeal is
frivolous, as mandated by Johnson v. State, 885 S.W.2d 641, 645 (Tex.App.-Waco 1994
pet. ref'd). By letter dated October 19, counsel was notified by this Court that the prayer
for relief requesting the verdict be reversed and the case be remanded for further
proceedings was inconsistent with counsel's certification of no reversible error. Counsel
was directed by this Court to correct the defect on or before October 30, 2006. Counsel
was also notified by this Court that he was under a duty to request permission to withdraw
from representation in the event he believed the appeal to be frivolous. To date, counsel
has failed to either amend the Appellant's brief or file a motion to withdraw. Consequently,
we now abate this appeal and remand the cause to the trial court for further proceedings.

 Upon remand, the trial court shall immediately determine the following: 

 1. whether Appellant desires to prosecute the appeal; and if so,

 2. whether appointed counsel intended to file an Anders brief;

 3. if Appellant's counsel did intend to file an Anders brief; why he has
failed to correct the inconsistent prayer and file a motion to withdraw;

 4. if Appellant's counsel did not intend to file an Anders brief, whether he
has abandoned the appeal by failing to correct the inconsistent
positions taken in Appellant's brief;

 5. if Appellant's counsel has abandoned the appeal; whether new
counsel should be appointed on appeal.

 The trial court shall execute findings of fact and conclusions of law, and cause the
same to be included in a supplemental clerk's record to be filed with the Clerk of this Court
by December 29, 2006. A supplemental reporter's record of any hearing shall also be
included in the appellate record if requested by appellate counsel. 

 Should the trial court determine that (1) Appellant does desire to prosecute his
appeal, (2) Appellant's counsel did not intend to file an Anders brief, (3) Appellant's
counsel has abandoned Appellant's appeal, and (4) new counsel should be appointed on
appeal, then the trial court shall appoint new counsel; in which event the trial court shall
provide this Court with the name, address, telephone number, and state bar number of the
newly-appointed counsel. 

 It is so ordered.

 Per Curiam


 


Do not publish.

 

 



dException Locked="false" Priority="65" Name="Medium List 1"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-07-0453-CR,
07-07-0454-CR

 

IN THE COURT OF
APPEALS

 

FOR THE SEVENTH
DISTRICT OF TEXAS

 

AT AMARILLO

 

PANEL B

 

MAY 19, 2010

_________________________

 

LARRY SCROGGS,
APPELLANT

 

V. 

 

THE STATE OF TEXAS,
APPELLEE

_________________________

 

ALANA LYNN GARIEPY,
APPELLANT

 

V. 

 

THE STATE OF TEXAS,
APPELLEE

___________________________

 

FROM THE 69TH
DISTRICT COURT OF MOORE COUNTY;

 

NO. 3989; 3990;
HONORABLE RON ENNS, JUDGE

__________________________

 

 

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

 

 

OPINION

 

 

The
motions for rehearing of appellants Larry Scroggs and
Alana Gariepy are denied.  We withdraw our opinion and judgments of February
23, 2010, and substitute the following.  

In
these two cases, appellants were indicted for the offenses of aggravated
kidnapping[1]
and two counts of burglary of a habitation.[2]  They were tried together, and convicted of the
indicted offenses by a jury which assessed probated sentences and fines as
punishment.  Appellants challenge their
convictions and sentences through seven identical issues.  

We will reverse and render judgment vacating appellants
convictions for burglary of a habitation predicated on a felony (aggravated
kidnapping); modify the judgments as specified herein; remand in part for
recalculation of total fees and monthly fees due from appellants; and otherwise
affirm.

            Because this case
presents a protracted factual narrative and appellants challenge on appeal the
legal and factual sufficiency of the evidence supporting their convictions
under each count of their indictments, we will set forth the background facts
below in conjunction with our review of the sufficiency of the evidence issue. 

Discussion

Legal and Factual Sufficiency of the Evidence

            By their second issue,
appellants argue the evidence is legally and factually insufficient to support
their convictions for aggravated kidnapping and burglary.  We measure the legal and factual sufficiency
of the evidence against the elements of the offense as defined by a
hypothetically correct jury charge.  See Wooley v. State, 273
S.W.3d 260, 268 (Tex.Crim.App. 2008) (holding
that factual sufficiency, like legal sufficiency, should be measured by the
elements of the offense as defined by a hypothetically correct jury charge); Malik v. State, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). 


In conducting a legal sufficiency review, we view the
evidence in the light most favorable to the verdict to determine whether a
rational fact finder could have found each element of the offense beyond a
reasonable doubt.  Swearingen v.
State, 101 S.W.3d 89, 95 (Tex.Crim.App. 2003); Conner
v. State, 67 S.W.3d 192, 197 (Tex.Crim.App. 2001)
(citing Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct.
2781, 61 L.Ed.2d 560 (1979)).  If, based
on all the evidence, a reasonably-minded jury must necessarily entertain a
reasonable doubt of the defendant's guilt, due process requires that we reverse
and order a judgment of acquittal.  Swearingen,
101 S.W.3d at 95, (citing Narvaiz v. State, 840
S.W.2d 415, 423 (Tex.Crim.App. 1992), cert. denied,
507 U.S. 975, 113 S. Ct. 1422, 122 L. Ed. 2d 791 (1993)).

A factual sufficiency review of the evidence is barely
distinguishable from the legal sufficiency review under Jackson v. Virginia.  Marshall v. State, 210
S.W.3d 618, 625 (Tex.Crim.App. 2006). A
factual sufficiency review considers whether the evidence supporting guilt,
though legally sufficient, is so weak that the jury's verdict seems clearly
wrong and manifestly unjust, or evidence contrary to the verdict is such that
the jury's verdict is against the great weight and preponderance of the
evidence.  Id.; Watson
v. State, 204 S.W.3d 404, 414-15 (Tex.Crim.App.
2006); Johnson v. State, 23 S.W.3d 1, 11 (Tex.Crim.App.
2000).  In a factual sufficiency
review, we again consider all the evidence, but now in a neutral light.  Marshall, 210 S.W.3d
at 625; Watson, 204 S.W.3d at 414.  Although an appellate courts authority to
review factual sufficiency permits the court to disagree with the fact finders
determinations, even to a limited degree those concerning the weight and
credibility of the evidence, the appellate court must accord them due
deference.  Marshall, 210 S.W.3d at 625; Johnson, 23 S.W.3d at 9.  When there is a conflict in the evidence, to
find it factually insufficient we must first be able to say, with some
objective basis in the record, that the great weight and preponderance of all
the evidence contradicts the jury's verdict. 
Watson, 204 S.W.3d at 417.  

            A person commits the
offense of aggravated kidnapping if the person intentionally or knowingly
abducts another person and uses or exhibits a deadly weapon during the
commission of the offense.  Tex. Penal Code Ann. § 20.04(b) (Vernon 2003); Hines v. State, 75
S.W.3d 444, 446 (Tex.Crim.App. 2002).  Abduct includes restraining a person with
intent to prevent her liberation by using or threatening to use deadly
force.  Tex. Penal Code
Ann. § 20.01(2) (Vernon 2003). 
Restrain means to restrict a persons movements without consent, so as
to interfere substantially with the person's liberty, by moving the person from
one place to another or by confining the person.  Tex. Penal Code Ann. §
20.01(1) (Vernon 2003).  Restraint
is without consent if it is accomplished by force, intimidation, or
deception.  Tex. Penal Code Ann. § 20.01(1)(A) (Vernon 2003). 
No specific time requirement exists for determining whether a restraint
has taken place.  Hines
v. State, 75 S.W.3d 444, 447-48 (Tex.Crim.App.
2002).  Deadly force is defined
as a force that is intended or known by the actor to cause, or in the manner
of its use or intended use is capable of causing, death or serious bodily
injury.  Holmes v.
State, 830 S.W.2d 263, 265 (Tex.App.Texarkana
1992, no pet.). 

            A person commits the
offense of burglary if, without the effective consent of the owner, the person:


(1)  enters
a habitation, or a building (or any portion of a building) not then open to the
public, with intent to commit a felony, theft, or an assault; or

 

(2)  remains
concealed, with intent to commit a felony, theft, or an assault, in a building
or habitation; or

 

(3)  enters a building or habitation and commits or attempts to
commit a felony, theft, or an assault.  

 

See Tex.
Penal Code Ann. § 30.02 (Vernon 2003).

Factual Background

            Testimony showed that
Monique Graves and Kevin Hamilton lived together in a Dumas, Texas, apartment.  They
abused the pain reliever Oxycontin to the point of
addiction.  Graves purchased the drug
from appellant Gariepy.  Following the death of her mother, Graves
looked to Gariepy as a friend and mentor.  When Graves became pregnant, Gariepy supported her effort to cease drug abuse.  According to appellant Scroggs
brief, he and Gariepy were close friends.  

            On December 26, 2006,
about mid-day, Graves was dressing in the bedroom of her apartment.  Her pregnancy was near term.  Suddenly, Scroggs
forced open the front door, breaking the lock chain and door frame.  He stood in the door while Gariepy entered the bedroom.  She was angry and accused Graves and Hamilton
of breaking into her home and stealing a bottle of Oxycontin.

            Gariepy
pushed Graves onto the bed, grabbed her hair, and began slapping her.  Graves momentarily saw Scroggs
in her bedroom doorway.  Gariepy pulled hair from Graves head and struck her about
the head, cutting her lip and leaving marks on her ears and neck.  Gariepy demanded
that Graves dress and accompany her to Hamiltons workplace in Cactus, Texas,
and then to a hospital for a blood test. 
The blood test was to prove Graves denial she was taking Oxycontin.  Gariepy took Graves keys and cell phone.  Graves voluntarily walked from the apartment
into the common area of the apartment complex, hoping a bystander would see the
situation and call police.  From the
parking lot, Graves noticed a neighbor doing yard work.  She believed he heard her yelling for Gariepy to stop, but did not specifically call to him for
help.  

            Gariepy
remained angry in the parking lot and at times struck Graves.  According to Graves, Gariepy
screamed that Graves knew that was her only livelihood.  Scroggs stood at
the drivers door of his car and watched. 
Gariepy grabbed Graves by the hair and throat
and forced her into the backseat of Scroggs
car.  The vehicle was equipped with front
bucket seats.  As Gariepy
forced her into the car, Graves noticed Scroggs had a
handgun.  Scroggs
pointed the gun toward the backseat.  

            Jimmy Donoho lived in a house behind the apartment complex where
Graves lived.  Donoho
testified he was doing yard work on that day and saw two unidentified women
outside, at the apartment complex.  One
woman had her hands on the other woman as the other screamed, Please, please
stop, stop, please, I didnt do anything wrong. 

            On cross-examination, Donoho said he saw the same women three times at the
apartments over a period of about ten minutes. 
On the last observation, he also saw a man at an apartment door yelling,
Thats the way you want it, thats the way youre going to get it.  Donoho had concerns
but chose not to call police as he wished not to become involved in the
situation.  

            With Graves in the backseat
and Gariepy in the front passenger seat, Scroggs drove toward Hamiltons workplace in Cactus.  Along the way, Gariepy
called Hamilton on a cell phone, accusing him of thievery and inquiring if he
knew how much money he owed her.  Hamilton
testified that as they spoke he could hear Graves in the background saying,
No, no, no.  He opined she sounded
frightened.  Gariepy
also told Hamilton that Graves would be around long enough to have that baby.

            Hamilton left work in a
company pickup and pulled to the side of the road when he saw Scroggs car approaching. 
As Scroggs car slowed to a stop by Hamiltons
pickup, Graves placed her hand on the cars inside
door handle.  Scroggs
told her not to try anything funny and Gariepy
grabbed Graves and pulled her forward. 
Hamilton testified he observed from his vehicle Scroggs
pointing a gun at Graves.  Scroggs gestured with the gun as he spoke.  According to Graves, Scroggs
pointed the gun at her when she placed her hand on the door handle as the
vehicle stopped. 

            As they spoke beside the
highway, Scroggs and Gariepy
accused Hamilton of theft.  They also
conveyed their intention of obtaining a blood test for Graves at the
hospital.  Scroggs
and Gariepy, with Graves remaining in the backseat,
then drove back to Graves apartment. 
Hamilton followed.  At the
apartment, Hamilton and Gariepy went inside while
Graves and Scroggs remained outside.  According to Graves and Hamilton, Scroggs held the gun concealed by a blue sock hat.  Hamilton testified that Graves was
terrified and mouthed to him, Help me, help me.

            Gariepy
then directed the parties to the hospital and allowed Graves to ride with
Hamilton while she and Scroggs followed.  As they drove from the apartment complex,
Hamilton called 911 on his cell phone. 
According to Hamilton, he placed the phone on his lap in fear Scroggs and Gariepy would see him
calling.  

            In response to the call,
Dumas police officer Tommy Gonzales arrived at the hospital and was soon joined
by officer Jason Wilkins.  According to Gonzales, Hamilton was crying
and whispered Scroggs had a gun.  Gonzales described Graves as shaking
severely and crying.  He observed she
had a swollen and busted lip.  After
ordering Scroggs from his car at gunpoint, Gonzales
located a gun on the drivers seat. 
Wilkins arrived and took Scroggs into
custody.  Gonzales went to Graves
apartment and observed a shoe print on the door by the knob and the frame cracked
and damaged.

Gariepy testified at
trial.  She averred a close relationship
developed between Graves and her after the death of Graves mother.  On December 25, Gariepys
brother, James West, briefly visited her and apparently left behind a pill
bottle containing Oxycontin tablets.  Graves thereafter visited Gariepy
before they left simultaneously.  Gariepy believed Graves saw the pill bottle during the
visit.  Several hours later, when she
returned from a family Christmas gathering, Gariepy
saw signs of a break-in at her home.  The
only item missing was Wests bottle of Oxycontin.  Gariepy was not
able to contact Graves that day.  

            Gariepy
testified that the next day, Scroggs drove her to
Graves apartment in Dumas from Gariepys home in
Fritch, Texas.  Graves would not answer
the door.  At Gariepys
command, Scroggs pushed the door open and then
stepped back outside.  

            Gariepy
said she and Graves argued inside the apartment.  Gariepy pushed
Graves on the bed and thumped her nose, perhaps more than once.  Graves eventually confessed that Hamilton
broke into Gariepys home and took the Oxycontin.  Graves
agreed to a blood test.  Gariepy required that Graves ride with Scroggs
and her.  Gariepy
forced Graves into Scroggs car by grabbing her
hair.  The three then set out for
Hamiltons workplace.  Gariepy denied striking Graves while they drove to
Hamiltons workplace in Cactus but admitted speaking severely with her.  As they stopped to speak with Hamilton, Scroggs told Graves to remove her hand from the door handle
and Gariepy grabbed Graves and pulled her
forward.  Scroggs
had a handgun in the car but, according to Gariepy,
did not point it at Graves.  Gariepy demanded the pills and Hamilton acknowledged they
were at the apartment.  Hamilton then
followed Scroggs back to the apartment where Hamilton
retrieved the pills.  Graves rode with
Hamilton to the hospital.  Gariepy left the bottle of Oxycontin
in Scroggs car which was impounded by police.  The bottle of pills was not confiscated as
evidence.

            Gariepy
testified that she did not call Child Protective Services (CPS) after
suspecting Graves was using Oxycontin while pregnant
because she wanted to investigate and allow Graves the opportunity to prove her
innocence through a blood test. 

            Through
cross-examination, counsel for appellants developed that in their statements to
police Graves and Hamilton did not mention stopping at the apartment before
going to the hospital.  According to the
statements, after a second roadside stop Graves rode the rest of the way to the
hospital with Hamilton. 

            Aggravated Kidnapping

            We reject appellants
challenge to the sufficiency of evidence supporting their conviction for
aggravated kidnapping.  Appellants
specifically challenge the sufficiency of evidence proving their mens rea to commit
aggravated kidnapping.  A kidnapping
becomes a completed offense when a restraint is accomplished and evidence shows
the actor manifested the specific intent to prevent the victims liberation by
secreting the victim or using or threatening use of deadly force.  Mason v. State, 905 S.W.2d 570, 575 (Tex.Crim.App. 1995). 
The use or threatened use of deadly force is part of the mens rea of
kidnapping and not the actus reus.  Id. 


            Appellants also argue
the evidence was insufficient to prove they restrained Graves by moving her
from one place to another.  While it
appears undisputed that Graves agreed to have a blood test at the hospital, it
is undisputed also that she did not consent to accompany appellants to
Hamiltons workplace in Cactus or to ride in Scroggs
car.  In the apartment, Gariepy physically prevented Graves from calling 911 by
pulling the cell phone from her hand. 
She retained Graves cell phone, took her keys, and forced her into the
backseat of Scroggs car.  Scroggs had a
handgun in the car and according to Graves pointed it at her.  Gariepy physically
prevented Graves from exiting the vehicle by grabbing her.  

            Burglary of a
Habitation

            We also reject
appellants argument the evidence was legally and factually insufficient to
support the jurys verdict of burglary of a habitation under count two of the
indictment.

            Count two alleged
appellants entered Graves apartment without consent and attempted to or did
assault her.[3]  The basis of appellants complaint here is
the evidence was not sufficient to prove beyond a reasonable doubt that an
assault of Graves was intended before appellants entered the apartment.  Proof of this fact, however, was not required
for appellants conviction under the indictment.  Rather, the State had but to show that after
entering the apartment without Graves consent, appellants attempted to or did
assault Graves.  See Tex. Penal
Code Ann. § 30.02(a)(3) (Vernon 2003).  

            Viewed in the light most
favorable to the verdict, the combined force of the evidence supporting appellants
convictions for aggravated kidnapping and burglary under counts one and two of
the indictments would have allowed a rational juror to find beyond a reasonable
doubt the legal elements of the offenses alleged.  Affording due deference to the jurys
credibility determinations, and considering the evidence in a neutral light,
the jury was rationally justified in finding beyond a reasonable doubt that
appellants committed aggravated kidnapping and burglary of a habitation.  Because the evidence was legally and
factually sufficient, we overrule appellants second issue.[4]

 

Immunity: Motion for Instructed Verdict and Jury Instruction

            In their first issue,
appellants argue the trial court erred by denying their motions for instructed
verdict and to dismiss grounded on the affirmative defense of immunity.[5]  Within this issue, they further argue the
trial court erred by denying a requested jury instruction on immunity.  Although the issue is multifarious, we are
able to follow the argument and will address the complaints asserted.  See Tex. R. App. P. 38.9.

            Because appellants bore
the burden of proof of their immunity defense by the preponderance of the
evidence standard, we follow the standard of review applied in civil cases for
review of denial of an instructed verdict. 
See Watson, 204 S.W.3d at 436-37 (Cochran, J., dissenting).  A trial courts denial of a motion for
instructed verdict may be reversed if the evidence conclusively proves a fact
establishing a partys right to judgment as a matter of law, and there is no
evidence to the contrary.  See McCarley v. Hopkins, 687 S.W.2d 510, 512 (Tex.App.Houston [1st Dist.] 1985, no writ).  On review of a denial for instructed verdict,
we consider all the evidence in the light most favorable to the non-movant and disregard all contrary evidence.  Harris County v. Demny, 886 S.W.2d 330, 333 (Tex.App.Houston
[1st Dist.] 1994, writ denied). 
All reasonable inferences are resolved in favor of the non-movant.  Id.  If the record contains any conflicting
evidence of probative value on any theory of recovery, the question is one of
fact for resolution by the jury.  Cliffs Drilling Co. v. Burrows, 930 S.W.2d 709, 712 (Tex.App.Houston [1st Dist.] 1996, no writ).

            Appellants argue that
Graves was endangering and abusing or neglecting her unborn child by
consuming Oxycontin while pregnant.  Rather than immediately report this belief to
CPS or to a law enforcement agency, they decided to compel a blood test of
Graves and then decide whether to report abuse or neglect.

            According to appellants,
Texas Family Code § 261.106[6]
grants them immunity from the conduct giving rise to the indicted offenses
because they were reporting and assisting in the investigation of a report of
alleged child abuse or neglect.[7]  Appellants contentions are without
merit.  

            Appellants assertions
of immunity are defeated by the plain language of the statutes to which they
refer.[8]  Reports of suspected child abuse or neglect
under subchapter B of chapter 261 of the Family Code are made to law
enforcement or other designated state agencies. 
See Tex. Fam. Code Ann. §
261.101(a) (Vernon 2008) (requiring immediate report as provided by this
subchapter); § 261.103 (with exceptions not relevant here, a report shall be
made to listed agencies). 
Investigations of such reports, under subchapter D of chapter 261, are
conducted by designated state agencies.  See
Tex. Fam. Code Ann. § 261.301(a) (Vernon 2008) (requiring investigation of
reports by agency with assistance from law enforcement).

Scroggs asserts a report was
made when another person, apparently Gariepy, related
facts to him creating in his mind a suspicion of abuse or neglect.  Thus appellants subsequent conduct toward
Graves was an investigation of the report of Gariepy.  But, as noted, a report under chapter 261 is
made to an agency designated by § 261.103, not to a private individual.  The investigation of a report under chapter
261 follows the report, it does not precede the
report.  And reports are investigated
under chapter 261 by agencies, not private individuals.  

Testimony showed appellants related their concerns for
the health of Graves unborn child to the officers who arrested them at the
hospital.  But their after-the-fact
reporting does not immunize them from liability for their criminal acts.  Section 261.106 plainly and unambiguously
grants immunity to those participating in the investigation of a report but
offers no protection for those choosing to forego its requirements.  Assuming, without deciding, that the immunity
provided by § 261.106 would extend to the felonious actions shown by the
evidence here,[9] the
evidence did not conclusively establish appellants entitlement to
immunity.  The trial court did not err by
denying their motion for instructed verdict.      

 

            Failure to Instruct
on Immunity Defense

            Appellants next argue
that if immunity was not established as a matter of law the trial court erred
by refusing a requested jury instruction on immunity.  Solely for this discussion, but without so
deciding, we assume the propriety of submitting a § 261.106 immunity
instruction when raised by the evidence in a criminal case.  

            We review the trial courts
denial of a requested jury instruction for abuse of discretion.  See Threadgill
v. State, 146 S.W.3d 654, 666 (Tex.Crim.App.
2004).  Our consideration is whether the
evidence adduced by either party, when viewed in the light most favorable to
the appellant, is sufficient to raise the defensive issue.  Granger v. State, 3
S.W.3d 36, 38 (Tex.Crim.App. 1999).  An accused has the right to an instruction
on any defensive issue raised by the evidence, whether such evidence is strong
or weak, unimpeached or contradicted, and regardless
of what the trial court may or may not think about the credibility of this
evidence.  Miller v. State, 815
S.W.2d 582, 585 (Tex.Crim.App. 1991) (citing Hayes
v. State, 728 S.W.2d 804, 807 (Tex.Crim.App.
1987)).  But an instruction is not
required when an affirmative defense is without evidentiary support.  See Dyson v. State, 672 S.W.2d 460,
463 (Tex.Crim.App. 1984) (self-defense).  As discussed, the conduct appellants seek to
immunize was not a report or the investigation of a report as contemplated by §
261.106.  There lies no dispute of fact
on the matter.  It was not an abuse of
discretion for the trial court to refuse submission of a jury instruction on
immunity.

            Because appellants
presented no evidence of conduct bringing them within the immunity granted by §
261.106, we overrule their first issue. 

Failure to Instruct on Defenses

            In their third issue,
appellants contend the trial court erred by failing to submit a requested
instruction on their defenses of defense of third person and necessity.  Defense of a third person requires inter
alia the actor reasonably believes his intervention is immediately
necessary to protect a third person.  Tex. Penal Code Ann. § 9.33(2) (Vernon 2003).  Necessity requires inter alia proof
that the actor reasonably believes the conduct in question is immediately
necessary to avoid imminent harm.  Tex. Penal Code Ann. § 9.22(1) (Vernon 2003).  

            A reasonable belief is
one held by an ordinary and prudent person in the same circumstance as the
actor.  Tex. Penal Code
Ann. § 1.07(42) (Vernon Supp. 2009). 
Whether a defendant was prompted to act by a reasonable belief is
ordinarily an issue for the trier of fact.  Brazelton v. State, 947 S.W.2d 644, 648 (Tex.App.Fort
Worth 1997, no pet.).  However,
this belief may be deemed unreasonable as a matter of law if undisputed facts
demonstrate a complete absence of immediate necessity or immediate harm.  Arnwine
v. State, 20 S.W.3d 155, 159 (Tex.App.Texarkana
2000, no pet.); Wilson v. State, 777 S.W.2d 823, 825 (Tex.App.Austin 1989), affd
853 S.W.2d 547 (Tex.Crim.App. 1993).  Whether the evidence raises a defense is
always a question of law. Shaw v. State, 181 S.W.3d 450, 452 (Tex.App.Waco 2005), affd
243 S.W.3d 647 (Tex.Crim.App. 2007).

When Gariepy discovered the
burglary of her house she became very upset and tried unsuccessfully to
contact Graves.  Appellants then had
overnight to deliberate the situation before they embarked on their felonious
conduct.  Even if one accepts their
contention they were motivated at least in part by concern over the possible
effects of Oxycontin on Graves unborn child, we find
no reasonable person could believe the assault and kidnapping of Graves and
burglary of her apartment were immediately necessary to prevent imminent harm
to the child.  See Jackson v. State, 50 S.W.3d 579, 595 (Tex.App.Fort Worth 2001, pet. refused) (testimony raised
issue of necessity only for defendant to continue driving, not to drive over
speed limit, disregard traffic control devices and veer into oncoming lanes of
traffic); cf. Smith v. State, 874 S.W.2d 269, 273 (Tex.App.Houston
[14th Dist.] 1994, pet. refused) (in overruling evidentiary sufficiency
challenge of negative finding of necessity defense in interference with child
custody case, court noted appellant could have, but did not, contact CPS
regarding safety of children). 
Appellants third issue is overruled.

Admissibility of Extraneous Offense Evidence: Rules 404(b) and 403

            The State offered video
recordings made at the hospital at the time of appellants arrests by the
cameras in the patrol cars of Gonzales and Wilkerson.  The recordings contain a statement by
Hamilton that he and Graves bought Oxycontin from Gariepy before Graves learned of her pregnancy.  According to appellants, this evidence was
not admissible under Rule of Evidence 404(b) and even if admissible its
probative value was substantially outweighed by the danger of unfair
prejudice.  See Tex. R. Evid. 404(b) & 403.  The State counters that the evidence was
admissible to rebut appellants claim that their conduct was motivated by the
desire to protect Graves unborn child from Oxycontin
and show their true motive was determining if Graves and Hamilton stole the Oxycontin.

            Rule 404(b) provides
that evidence of other crimes, wrongs or acts is not admissible to prove the
character of a person in order to show action in conformity therewith, but such
evidence may be admissible to show motive, opportunity, intent, preparation,
plan, knowledge, identity, or absence of mistake or accident.  Tex. R. Evid.
404(b).  Merely
introducing evidence for a purpose other than character conformity, or any of
the other enumerated purposes in Rule 404(b), does not, by itself, make that
evidence admissible.  Rankin
v. State, 974 S.W.2d 707, 709 (Tex.Crim.App.
1996).  Whether objected-to
evidence of other crimes, wrongs, or acts has relevance apart from character
conformity, as required by Rule 404(b), is a question for the trial court.  Montgomery v. State, 810
S.W.2d 372, 391 (Tex.Crim.App. 1990) (op. on rehg).  An
appellate court owes no less deference to the trial judge in making this
judgment than it affords him in making any other relevancy call; that is, such
a decision is reviewed for abuse of discretion. 
Id.  Therefore, as long as
the trial court's ruling was within the zone of reasonable disagreement, we
will not intercede.  Id.  Extraneous offense evidence may be admissible
under Rule 404(b) to rebut a defensive theory raised by the States witnesses
during opening statement or cross-examination. 
Ransom v. State, 920 S.W.2d 288, 301 (Tex.Crim.App. 1996) (op. on rehg)
(cross-examination of States witness); Powell v. State, 63 S.W.3d 435,
439 (Tex.Crim.App. 2001) (opening statement).  Such evidence is relevant apart from proof of
character conformity.  See Montgomery,
810 S.W.2d at 387. 


            At trial, appellants
urged the affirmative defense of immunity and the defenses of defense of third
person and necessity.  During opening
statement counsel for appellants told the jury that the evidence would show the
police failed to report the suspected abuse or neglect of Graves unborn child
and that appellants alone took steps to investigate and report the suspected
abuse or neglect.  Officer Gonzales was
the States first witness and on cross-examination admitted that Gariepy wanted Graves unborn child checked for Oxycontin, that he did not investigate or report the drug
use claim to CPS, and that he believed it was child abuse or neglect for a
pregnant woman to take Oxycontin.  Appellants counsel raised their defenses
through opening statement and cross-examination of Gonzales.  The trial court did not abuse its discretion
by admitting Hamiltons statement on the video recording as it was relevant to
rebut appellants defenses.

            Relevant evidence may,
nevertheless, be excluded under Rule 403 if its probative value is
substantially outweighed by the danger of unfair prejudice, confusion of the
issues, or misleading the jury, or by considerations of undue delay, or
needless presentation of cumulative evidence. 
Tex. R. Evid.
403.  When conducting the balancing test
of Rule 403, the trial court determines whether the probative value of the
evidence is substantially outweighed by one of the countervailing
considerations listed in the rule.  Id.  In its evaluation of the evidence, the trial
court balances (1) the inherent probative force of the proffered item of
evidence along with (2) the proponents need for that evidence against (3) any
tendency of the evidence to suggest a decision on an improper basis, (4) any
tendency of the evidence to confuse or distract the jury from the main issues,
(5) any tendency of the evidence to be given undue weight by a jury that has
not been equipped to evaluate the probative force of the evidence, and (6) the
likelihood that presentation of the evidence will consume an inordinate amount
of time or repeat evidence already admitted. 
Casey v. State, 215 S.W.3d 870, 880 (Tex.Crim.App. 2007).

            Appellants complain
Hamiltons statement contained on the video recording should have been excluded
under Rule 403 because it was harmful to [their] image before the jury.  At its essence, appellants case was their
claimed concern for Graves unborn child. 
The States theory was appellants burgled Graves apartment and
kidnapped her because she and Hamilton stole appellants drugs.  From opening statement through argument,
these factual interpretations were before the jury.  We fail to see how Hamiltons brief utterance
had a tendency to suggest a decision on an improper basis, cause jury confusion
or distraction, or receive undue weight by the jury.  See Gigliobianco
v. State, 210 S.W.3d 637, 642 (Tex.Crim.App.
2006).  The trial court could have,
therefore, reasonably concluded that the probative value of Hamiltons
statement on the video recording was not substantially outweighed by the danger
of unfair prejudice.  We find the trial
court did not abuse its discretion by admitting the evidence over appellants
Rule 403 objection.  We overrule
appellants fourth issue. 

Failure to Instruct on Lesser Included Offense

            By their fifth issue,
appellants contend the trial court erred by failing to instruct the jury on the
lesser-included offense of criminal trespass of a habitation.

An offense is a
lesser included offense if:


(1) it is established by proof of the same or less
than all the facts required to establish the commission of the offense charged;


(2) it differs from the offense charged only in the
respect that a less serious injury or risk of injury to the same person,
property, or public interest suffices to establish its commission;


(3) it differs from the offense charged only in the
respect that a less culpable mental state suffices to establish its commission;
or


(4) it consists of an attempt to commit the offense
charged or an otherwise included offense.

 

Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon 2006). 

            To determine if a
defendant is entitled to a lesser included offense instruction, a two-pronged
test applies: (1) the lesser-included offense must be included within the proof
necessary to establish the offense charged, and (2) the record must contain
some evidence that if the defendant is guilty, he is guilty only of the
lesser-included offense.  See Rousseau
v. State, 855 S.W.2d 666, 672 (Tex.Crim.App.
1993).  The first prong of the Rousseau
test is a question of law, wholly independent of the evidence adduced at
trial.  Hall v.
State, 225 S.W.3d 524, 535 (Tex.Crim.App. 2007).  In analyzing the second prong, we review all
the evidence admitted at trial.  Enriquez v. State, 21 S.W.3d 277, 278 (Tex.Crim.App.
2000).  If more than a scintilla
of evidence from any source raises the issue that the defendant is guilty only
of the lesser-included offense, the instruction is proper on request.  Forest v. State, 989
S.W.2d 365, 367 (Tex.Crim.App. 1999).  Credibility of the evidence and whether it
conflicts with other evidence is not to be considered when determining whether
the jury should have been charged with a lesser-included offense.  Paz v. State, 44
S.W.3d 98, 100 (Tex.Crim.App. 2001). 

            Here, appellants were
charged with burglary pursuant to Texas Penal Code § 30.02(a)(3)
which specifies a person commits an offense if, without the effective consent
of the owner, the person enters a building or habitation and commits or
attempts to commit a felony, theft, or an assault.  Tex. Penal Code Ann. § 30.02(a)(3) (Vernon 2003).  A
person commits criminal trespass if he enters or remains on or in property of
another without effective consent and had notice that the entry was forbidden
or received notice to depart but failed to do so.  See Tex. Penal Code Ann. § 30.05(a)
(Vernon Supp. 2009).

            The offense of criminal
trespass can be a lesser included offense of burglary.  Phillips
v. State, 178 S.W.3d 78, 82 (Tex.App.--Houston
[1st Dist.] 2005 pet. refused).  For our
disposition of appellants argument, we assume the first prong of the Rousseau analysis is satisfied.  But under the second prong the evidence must
raise an issue that the defendant, if guilty, is guilty only of the lesser
offense of criminal trespass of a habitation. 
See Pickens v. State, 165 S.W.3d 675, 679 (Tex.Crim.App.
2005); Aguilar, 682 S.W.2d at 558.

            Graves testified she was
dressing in her apartment when the door broke open. Scroggs
stood in the doorway as Gariepy walked across the
living room.  She pushed Graves onto the
bed, pulled her hair, and slapped her. 
According to Gariepy, she went to the door of
Graves apartment and repeatedly knocked but Graves did not answer.  Gariepy then
instructed Scroggs to force open the door.  According to his statement, Scroggs did so with sufficient force to break the chain
lock and the two entered.  Gariepy argued with Graves and pushed her onto the
bed.  Gariepy
repeatedly struck Graves on the face.  On
this record, no rational juror could find that if appellants were guilty, they
were guilty only of criminal trespass. 

            The trial court did not
err by denying appellants request for an instruction on criminal trespass of a
habitation.  We overrule appellants
fifth issue.

Double Jeopardy Violation

We find record indication of unassigned error which we
address on our own motion.  From the face
of the record it appears appellants convictions for burglary of a habitation
violate the Double Jeopardy Clause of the Fifth Amendment of the United States
Constitution.[10]  Appellate courts have the jurisdiction and
authority to review unassigned error.  In
the case of a double-jeopardy violation, the issue may be addressed as an
unassigned error when the violation is apparent from the face of the record.  Bigon v. State, 252 S.W.3d 360, 369 (Tex.Crim.App. 2008) (citations omitted).[11]  

The indictments allege two counts of burglary of a
habitation by appellants.  Tex. Penal
Code Ann. § 30.02(a)(3) (Vernon 2003).  According to count two, appellants intentionally
or knowingly entered[ed] a
habitation, without the effective consent of Monique Graves, the owner thereof,
and attempted to commit or committed an assault against Monique Graves.  Count three alleged appellants intentionally
or knowingly enter[ed] a
habitation, without the effective consent of Monique Graves, the owner thereof,
and attempted to commit or committed the felony offense of aggravated
kidnapping or kidnapping.  It is
undisputed that the charged burglaries sprang from a single unlawful entry by
appellants of Graves apartment. 

The Double Jeopardy Clause of the Fifth Amendment
consists of three separate protections: (1) it protects against a second
prosecution for the same offense after acquittal; (2) it protects against a
second prosecution for the same offense after conviction; and (3) it protects
against multiple punishments.  North Carolina v. Pearce,
395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.E.2d 656 (1969).  Here we are concerned with the third
protection, that from multiple punishments.

A defendant suffers multiple punishments in violation
of the Double Jeopardy Clause when he is convicted of more offenses than the
legislature intended.  Ervin v. State, 991 S.W.2d 804, 807 (Tex.Crim.App. 1999) (citing
Ball v. United States, 470 U.S. 856, 105 S.Ct. 1668,
84 L.Ed.2d 740 (1985)).  The legislature
. . . determines whether offenses are the same for double-jeopardy purposes by
defining the allowable unit of prosecution.  Ex parte
Cavazos, 203 S.W.3d at 336 (quoting Sanabria v. United States, 437 U.S. 54, 69, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978)).  The legislature also decides whether a
particular course of conduct involves one or more distinct offenses under a
given statute.  Ex parte Cavazos, 203 S.W.3d at 336.  Thus it is the allowable unit of prosecution
that determines the scope of double jeopardys protection from multiple
punishments under the burglary statute.  Id. 


The gravamen of a burglary is an unauthorized entry with
the requisite mental state.  Ex parte Cavazos, 203 S.W.3d at 337.[12]
 The harm of burglary results from the unauthorized
entry.  Id.  The offense is complete from
entry.  Id.  Because burglary is a
crime against property and not a person, the allowable unit of prosecution for
a burglary is the unlawful entry.  Id. 
On the face of this record, we find appellants were punished twice for a
single unlawful entry.

On finding a double-jeopardy violation, we retain the
conviction with the most serious punishment, and vacate any remaining
convictions that are the same for double jeopardy purposes.  Landers
v. State, 957 S.W.2d 558, 560 (Tex.Crim.App.
1997) overruled on other grounds, Ex
parte Cavazos, 203 S.W.3d at 338.  See Bigon, 252
S.W.3d at 372-73 (discussing Landers).  The most serious offense is the offense for
which the greatest sentence was assessed. 
Ex parte Cavazos, 203 S.W.3d
at 338 (overruling Landers to the
extent it allowed consideration of other factors such as the degree of the
felony, range of punishment, and rules governing parole eligibility and
awarding good-conduct time).  But here,
appellants received identical sentences for their two burglary
convictions.  We, therefore, break the
apparent tie, by affirming the offense first named in the verdict form;
burglary predicated on assault.  See Ex parte Cavazos, 203 S.W.3d at 339
n.8 (court noted some of its cases may have suggested this as a tie breaker but
did not address the question).  We vacate
the judgments convicting appellants of burglary of a habitation predicated on
commission of aggravated kidnapping.

 

 

Sentencing Error

            In their sixth issue,
appellants claim various errors in the judgments of the trial court.  Appellants complaint of sentencing error for
their convictions under count three is rendered moot by our finding of a double
jeopardy violation.

            Appellants assert the
trial court abused its discretion by imposing cumulative sentencing, not
adjusting the classification of aggravated kidnapping downward to a second
degree felony on the jurys finding that Graves was voluntarily released at a
safe place, and not probating the fines for counts two and three as assessed in
the verdicts of the jury.

            For each appellant, the
first page of each judgment states, This sentence shall run consecutive to the
case below.  We interpret this means on
completion of the sentence imposed for count one,
appellants begin service of the sentence imposed under count two.  

            It is not disputed that
the offenses for which appellants were indicted and convicted arose from the
same criminal episode.  See Tex.
Penal Code Ann. § 3.01 (Vernon 2003). 
Subject to exceptions not applicable here, Penal Code § 3.03(a) requires
concurrent sentencing when an accused is found guilty of more than one offense
arising from the same criminal episode and prosecuted in a single criminal
action.  Tex. Penal
Code Ann. § 3.03(a) (Vernon Supp. 2009). 
The trial courts imposition of consecutive sentences runs afoul of the
statutory requirement, and constitutes an abuse of its discretion.   

            The judgments under
count one, for aggravated kidnapping, classify the offense a first degree
felony.  While this classification is
generally correct, the Penal Code, however, provides an exception.  Tex. Penal Code Ann. §
20.04(c) (Vernon 2003).  Section
20.04(d) classifies aggravated kidnapping a second degree felony if the
defendant proves he voluntarily released the victim in a safe place.  Tex. Penal Code Ann. §
20.04(d) (Vernon 2003).  The jury
found appellants voluntarily released Graves in a safe place.  Accordingly, the judgments as to count one
should have classified the offense a second degree felony.

            In its verdicts on
punishment, the jury assessed fines of $5,000 for counts two and three but
recommended probation of each.  The
judgments, however, order payment of a fine of $5,000 on counts two and
three.  We will reform the judgments of
count two to conform to the verdicts of the jury.  Because the court included the fines in its
calculation of payments ordered by the judgments on count two and because we
vacate the judgments under count three, we remand in part with instructions for
the trial court to recalculate the total amount owed and monthly installment
due of each appellant.

Equal Protection Claim

            In their seventh issue,
appellants argue they were denied equal protection of the law under the
Constitutions of the United States and Texas. 
Their complaint is the trial court denied their defenses of immunity,
defense of third person, and necessity because Graves child was not, at the
time of the events giving rise to the indictment, yet born alive.  They imply one protecting a child born alive
from ingestion of Oxycontin would be entitled to
immunity and justification defenses.  

            We have discussed why
the trial court did not err by denying appellants motions for directed verdict
and refusing jury submission of their proposed instructions on immunity and
justification defenses.  Because the trial
court did not abuse its discretion in denying appellants motions and requests
on non-constitutional grounds, it is not necessary to review their
constitutional argument.  Cf. Turner
v. State, 754 S.W.2d 668, 675 (Tex.Crim.App.
1988) (courts do not address the constitutionality of a statute unless
consideration is essential to decision). 
A decision of issue seven is unnecessary to our disposition of the
appeal.  Tex. R. App. P. 47.1.

Conclusion

            We render judgment
vacating the judgments of the trial court on count three of the indictments,
burglary of a habitation predicated on aggravated kidnapping.  

The remaining judgments of the trial court are modified
to provide the sentences assessed against appellants under each judgment shall
run concurrently; the classification of offense under count one is a second
degree felony; and the fines of $5,000 for count two are probated.  

Both cases on appeal are remanded in part with
instructions to the trial court to recalculate the amounts owed and monthly
installment payments due of each appellant in light of our vacation of the
judgments under count three and the probation of fines assessed for count
two.  Otherwise, and as modified, we
affirm the judgments of the trial court. 

 

 

                                                            

                                                            James T. Campbell

              
                                                     Justice

 

 

Publish.    

 

 

 











[1]
Tex. Penal Code Ann. § 20.04(b) (Vernon 2003).





[2]
Tex. Penal Code Ann. § 30.02(a)(3) (Vernon 2003)
(attempt or commission of assault and a felony (kidnapping)).

 





[3]
See Tex. Penal Code Ann. § 30.02(a)(3) (Vernon
2003).  A person commits assault if the person inter alia intentionally, knowingly,
or recklessly causes bodily injury to another, including the persons
spouse.  See Tex. Penal Code Ann.
§ 22.01(a)(1) (Vernon Supp. 2009).





[4]  Because of our
disposition of this appeal, discussion of the legal and factual sufficiency of
the evidence supporting appellants convictions under count three of the
indictment, burglary predicated on a felony (aggravated kidnapping), is
unnecessary.  See Tex. R. App. P. 47.1.

 





[5]  Appellants
filed a pre-trial motion to dismiss which was denied.  They re-urged this motion at trial in the
course of making an oral motion for instructed verdict.  The basis of their argument is the evidence
was conclusive that under Family Code § 261.106 they were immune from criminal
prosecution for the conduct giving rise to the indicted offenses.  Tex. Fam. Code Ann. §
261.106 (Vernon 2008).  





[6]
In relevant part this section provides:

 

A person acting in
good faith who reports or assists in the investigation of a report of alleged
child abuse or neglect or who testifies or otherwise participates in a judicial
proceeding arising from a report, petition, or investigation of alleged child
abuse or neglect is immune from civil or criminal liability that might
otherwise be incurred or imposed.

 

Tex. Fam. Code Ann. § 261.106(a) (Vernon 2008).





[7]
The State argues the child abuse or neglect
referred to in Family Code Chapter 261 does not refer to unborn children so §
261.106 has no application in this case.  We do not reach the States argument.  

 





[8] Courts interpret a statute in accordance with the
plain meaning of its words unless they are ambiguous or the plain meaning leads
to absurd results.  Mosley
v. State, 983 S.W.2d 249, 256 (Tex.Crim.App.
1998).  





[9]  See State v. Harrod,
81 S.W.3d 904 (Tex.App.Dallas 2002, pet. refused)
(finding limits to statutes grant of immunity). 





[10]  No person
shall be subject for the same offense to be twice put in jeopardy of life or
limb.  U.S. Const., Amdt.
5.





 

[11]  In Bigon, as here, there was no double-jeopardy
objection at trial and on the issue error was not assigned in the court of
appeals.  Bigon, 252, S.W.3d at 369.  Cf.
Gonzalez v. State, 8 S.W.3d 640, 643 (Tex.Crim.App.
2000) (double jeopardy claim may be raised for first time on appeal if
undisputed facts show double jeopardy violation clearly apparent on face of
record and enforcement of usual rules of procedural default would serve no
legitimate state interest).  





[12]  Appellants
were indicted under Penal Code § 30.02(a)(3) which dispenses with the intent requirement of § (a)(1) and allows the State to prove after unlawful
entry the defendant actually committed or attempted to commit a felony, theft,
or assault.  Tex. Penal Code Ann. §
30.02(a)(3) (Vernon 2003).  See DeVaughn v. State, 749 S.W.3d 62, 65 (Tex.Crim.App. 1988) (gravamen of burglary is unlawful entry
accompanied by requisite mental state, § 30.02(a)(1)
& (2), or requisite acts or omissions under § 30.02(a)(3)).