Charles William SMITH, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. A14–92–00667–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

March 31, 1994.

Stanley G. Schneider, Houston, for appellant.

J. Harvey Hudson, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and MURPHY and ELLIS, JJ.

## OPINION

ELLIS, Justice.

Appellant, Charles William Smith, Jr., appeals his judgment of conviction for interference with child custody. *See* TEX.PENAL CODE ANN. § 25.03 (Vernon 1989). The jury rejected his plea of not guilty and assessed punishment at seven and one-half (7½) years confinement in the Institutional Division of the Texas Department of Criminal Justice and a $5,000 fine. We affirm.

On April 26, 1984, a hearing was held to determine temporary custody of the children in a pending divorce between appellant and his wife, Carolyn. After hearing the testimony of over a dozen witnesses, the trial court named Carolyn as temporary managing conservator and appellant as temporary possessory conservator. A hearing to determine permanent custody was set for September 17, 1984.

On September 17, 1984, appellant arrived at the hearing only to find that it had been reset for January 21, 1985. When appellant picked up his children for his weekend visitation on Friday, September 21, 1984, he did not return them on September 23 as required by the custody order. Instead, appellant had a friend drive him and the children to Houston Intercontinental Airport, where they got on a plane and left Houston. During the next several years, appellant and his children travelled around the world. They later settled in Mexico and established a home with Ana Traconi, appellant's fiancee, and her two children. After being gone for over seven years, they were found in Mexico and returned to the United States on January 13, 1992.

At trial, appellant asserted a defense of necessity based on an alleged fear of his children's safety. He testified that on many occasions he would return to their home in Madisonville, Texas after working in Spring, Texas, and find Carolyn asleep with the lights off. Several times he found the children in the care of his neighbors, Linda and Jack Douglas. On more than one occasion,

he found his children locked in a room while Carolyn slept in another room. He stated that while locked in the room, the children were forced to urinate in the closet.

Appellant also testified that in February of 1984 he quit his job in Spring to take a job in Madisonville and be closer to his children. In April of 1984, appellant was required to take a week-long business trip to Del Rio, Texas. During that week, appellant was notified that his children were in the care of his mother and sister. Appellant testified that, upon returning to Houston, he could not locate Carolyn. Subsequently, the children were abducted by Carolyn and Don Pinell at a car wash while in the care of appellant's sister. Appellant testified that such occurrences led him to believe that his children were in danger while with Carolyn.

Appellant asserts thirty-two points of error. First, the evidence is legally insufficient to refute his defense of necessity. Second, the evidence is factually insufficient to refute his defense of necessity. Third and fourth, the trial court abused its discretion in sustaining the State's objection to the proffered testimony of Linda and Jack Douglas, respectively, regarding appellant's state of mind and the condition of the children prior to and on September 22, 1984. Fifth through thirty-second, the trial court violated appellant's rights under: the Fourteenth Amendment of the U.S. Constitution; Article I, §§ 13 and 19 of the Texas Constitution; the Sixth Amendment of the U.S. Constitution; and Article I, § 10 of the Texas Constitution by sustaining the State's objections to the proffered testimony of Linda Douglas, Jack Douglas, Ana Traconi, Manuel Traconi, Rodrigio Montilla, Rodrigio Montilla Dominques, and Delorse Romero Depablo.

In his first two points of error, appellant asserts that the evidence was legally and factually insufficient to refute his necessity defense. The defense of necessity is enumerated in TEX.PENAL CODE ANN. § 9.22 (Vernon 1974):

Conduct is justified if:

(1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;

(2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and

(3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

"Necessity" is a traditional common-law *defense,* not an affirmative defense. A criminal defendant must first raise a defense, but once raised, the burden is on the State to disprove the defense beyond a reasonable doubt. *Moosani v. State,* 866 S.W.2d 736, 738 (Tex.App.—Houston [14th Dist.] 1993, no pet.) (citing *Johnson v. State,* 571 S.W.2d 170, 173 n. 4 (Tex.Crim.App.1978)).

## STANDARD OF REVIEW

*Legal Sufficiency:* The well-established standard for an appellate court to review the sufficiency of the evidence is to determine whether, in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The jury, as the trier of fact, is the sole judge of the credibility of the witnesses. *Soto v. State,* 864 S.W.2d 687, 691 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd) (citing *Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App.1986), *cert. denied,* 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988)). If there is evidence to establish that the defendant is guilty beyond a reasonable doubt, and the trier of fact believes that evidence, the appellate court cannot reverse the judgment on a sufficiency of the evidence ground. *Soto,* 864 S.W.2d at 691 (citing *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim. App.1988)).

*Factual Sufficiency:* Appellant urges us to apply the *Meraz* standard even though he has no burden of proof in this case. *See Meraz v. State,* 785 S.W.2d 146, 154 (Tex. Crim.App.1990). In *Meraz,* the Texas Court of Criminal Appeals wrote:

[W]hen the courts of appeals are called upon to exercise their fact jurisdiction, that is, examine whether the appellant proved

his affirmative defense or other fact issue *where the law has designated that the defendant has the burden of proof by a preponderance of the evidence,* the correct standard of review is whether after considering all the evidence relevant to the issue at hand, the judgment is so against the great weight and preponderance of the evidence so as to be manifestly unjust.

*Id.* at 154–55 (emphasis added).

This court has consistently and repeatedly interpreted *Meraz* as applying only to those cases in which the defendant has the burden of proof. *Moosani,* 866 S.W.2d at 738; *Richard v. State,* 830 S.W.2d 208, 213–14 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd); *Mukes v. State,* 828 S.W.2d 571, 573–74 (Tex. App.—Houston [14th Dist.] 1992, no pet.); *Brown v. State,* 804 S.W.2d 566, 571 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd); *Coleman v. State,* 804 S.W.2d 563, 565 (Tex. App.—Houston [14th Dist.] 1991, no pet.); *Marsh v. State,* 800 S.W.2d 607, 610 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd); *Gaynor v. State,* 788 S.W.2d 95, 97 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd). Appellant asks us to overrule our long line of cases to adopt the Austin Court of Appeals' view on *Meraz. See Stone v. State,* 823 S.W.2d 375 (Tex.App.—Austin 1992, pet. ref'd, untimely filed). The Austin Court is of the opinion that *Meraz* is not limited to cases in which the defendant has the burden of proof, and has used the *Meraz* standard in reviewing the sufficiency of the evidence relative to proof of the elements of the offense. *Stone,* 823 S.W.2d at 377. We respectfully disagree with this interpretation of *Meraz,* as have other courts of appeals. *See Crouch v. State,* 858 S.W.2d 599, 601 (Tex.App.—Fort Worth 1993, pet. ref'd); *Lopez v. State,* 824 S.W.2d 298, 304 (Tex.App.—Houston [1st Dist.] 1992, no pet.); *Borders v. State,* 822 S.W.2d 661, 667–68 (Tex.App.—Dallas 1991), *rev'd on other grounds,* 846 S.W.2d 834 (Tex. Crim.App.1992).

Recently, the Court of Criminal Appeals has refused to address this issue. *See Ex parte Schuessler,* 846 S.W.2d 850, 852 n. 5 (Tex.Crim.App.1993). The court wrote:

> *Meraz* was specifically directed to a factual sufficiency review involving matters in which the defendant has the burden of proof. A situation that is also present here. We emphasize that we do not express any view here as to whether our holding in *Meraz* is limited to those cases where the defendant has the burden of proof, or whether *Meraz* permits the courts of appeals to engage in a factual sufficiency review of the elements of an offense.

*Id.* (citations omitted).

■ Although the Court of Criminal Appeals "do[es] not express any view" on this issue, we are bound by our own precedent cited above. Therefore, until the Court of Criminal Appeals speaks to the issue, we hold that the standard set out in *Meraz* applies only to cases in which the defendant has the burden of proof and that the only standard to be applied when reviewing the sufficiency of the evidence is the standard set out in *Jackson.* However, in light of the Court of Criminal Appeals' dicta in *Ex parte Schuessler,* we have also reviewed the evidence under the *Meraz* standard and find that it is factually sufficient to refute appellant's defense of necessity.

## APPLICATION OF THE LAW TO THE FACTS

■ Appellant argues that the evidence was legally and factually insufficient to refute his defense of necessity. Tracking the language of the necessity statute, appellant asserts the evidence proved that:

1. he reasonably believed that taking the children was immediately necessary to avoid imminent harm (child abuse on the part of the mother);

2. avoiding the child abuse outweighed the harm sought to be prevented by the interference with child custody statute; and

3. no legislative purpose to exclude taking the children to avoid child abuse otherwise plainly appeared.

■ However, we agree with the State that the first prong of the defense of necessity is refuted beyond a reasonable doubt. "Imminent" means something that is impending, not pending; something that is on the

point of happening, not about to happen. An "imminent harm" occurs when there is an emergency situation, and it is "immediately necessary" to avoid that harm when a split-second decision is required without time to consider the law. In this case, appellant had plenty of time to consider his options and the penalties he would receive if he decided to violate the court's order. The children were in his possession for almost 24 hours before they left Houston Intercontinental Airport. Furthermore, appellant concealed the location of his children for over seven years. We cannot hold that it was *immediately necessary* for him to keep them out of the United States for that long, regardless of what danger they were in before they left. Finally, evidence was introduced at trial as to the several lawful alternatives available to appellant. For example, appellant could have complained to Child Protective Services or filed for an Ex Parte Prohibitive Order. Additionally, he could have filed a Petition for Home Studies or for an Ex Parte Temporary Order. Instead of choosing a lawful means to protect his children, appellant made the contemplated decision to violate the court order.

At oral argument, appellant asserted that his actions were reasonable because, although the trial court recognized Carolyn's drug problem, it still granted her temporary custody. In addition, after the second hearing was reset, he had no faith in the judicial system and in the meantime, felt that his children were being neglected or possibly abused by Carolyn. Lack of faith in the legal system cannot justify violating a court order. We overrule appellant's first and second points of error.

In his third and fourth points of error, appellant contends that the trial court abused its discretion in sustaining the State's objection, under TEX.R.CRIM.EVID. 403, to the proffered testimony of Linda and Jack Douglas regarding appellant's state of mind and the condition of the children prior to and on September 22, 1984. The Douglases lived next door to the Smiths' from 1983–84 in Madisonville, Texas. During that time, the Smith children often visited the Douglas home to play with the Douglas children.

At trial, the Douglases testified outside the presence of the jury. The crux of their testimony concerning the condition of the children was that the children often appeared "unkept" while in their mother's care. They also testified that the children frequently ate dinner at their home after they could not contact their mother to get permission. Mrs. Douglas stated that she would call and knock on the Smith door, but would get no response. This testimony pertains to 1983–84 when the Smith children lived next door to the Douglases. Carolyn and the children moved away in April of 1984. Although the testimony demonstrates some neglect on the part of Carolyn during April and the preceding months, it is irrelevant as to any "imminent harm" that might have existed in September of 1984. Even if it is remotely relevant, the Rule 403 objection was properly sustained because any probative value this testimony might have is outweighed by its prejudicial effect; the prejudice being an inference that because Carolyn neglected the children in April of 1984, she abused them in September of 1984, justifying some immediate action on the part of appellant.

In addition, the Douglases testified that the children seemed happier when they visited their father in September of 1984 and that appellant took much better care of them. This testimony is totally irrelevant. Appellant could have been the best father in the world and that would have no bearing on whether the children were in any imminent danger while with their mother.

Mr. Douglas also testified that appellant became obsessed with the idea that his children would become harmed or hurt. Mrs. Douglas testified that after the permanent custody hearing was reset, appellant's state of mind was one of disbelief. Although the actor's state of mind is relevant to the defense of necessity, he must *reasonably* believe that his conduct is necessary. *See* TEX.PENAL CODE ANN. § 9.22. The Douglases could not testify as to whether appellant's belief was reasonable because they could not ascertain any harm to the children caused by Carolyn in September of 1984. Appellant's third and fourth points of error are overruled.

In his fifth through thirty-second points of error, appellant claims that the trial court violated his rights under: the Fourteenth Amendment of the U.S. Constitution; Article I, §§ 13 and 19 of the Texas Constitution; the Sixth Amendment of the U.S. Constitution; and Article I, § 10 of the Texas Constitution by sustaining the State's objections to the proffered testimony of: a) Linda Douglas, the Smiths' neighbor in Madisonville; b) Jack Douglas, the Smiths' neighbor in Madisonville; c) Ana Traconi, appellant's fiancee in Mexico; d) Manuel Traconi, Ana's son; e) Rodrigio Montilla, appellant's children's playmate in Mexico; f) Rodrigio Montilla Dominques, a friend of appellant's in Mexico and father of Rodrigio Montilla; and g) Delorse Romero Depablo, a friend of appellant's in Mexico and mother of Rodrigio Montilla.

Appellant is correct in stating that if the State arbitrarily denies a criminal defendant the right to have a person testify who was physically and mentally capable of testifying to events that he had personally observed, and who would have given evidence which would have been relevant and material to the defense, then the defendant's constitutional rights are violated. *See Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); *Ex parte Scarbrough,* 604 S.W.2d 170, 174 (Tex.Crim.App.1980). However, the key is that the evidence must be *relevant and material.* For the reasons discussed above, the Douglas' testimony was not relevant, nor was it material to the issue of imminent harm. This is also true of the testimony of appellant's acquaintances in Mexico. Their testimony would have concerned how appellant treated his children while they were living in Mexico, *several years after the original taking of the children.* The defense of necessity concerns only what was "immediately necessary" to do in order to prevent an "imminent harm." These witnesses did not even know appellant or the children at the time they left the United States. They could not have known whether it was immediately necessary for appellant to take his children to avoid any imminent harm allegedly inflicted by Carolyn. As stated earlier, appellant could have been the best father in the world after he took the children, but that has no bearing on whether they were in any imminent harm at the time he took them. Appellant's fifth through thirty-second points of error are overruled.

Accordingly, the judgment of the trial court is affirmed.