COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-380-CR

 

 

JOHN CELESTINO VILLAREAL                                                APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 213TH DISTRICT COURT OF TARRANT COUNTY

 

                                                    

                                              ------------

MEMORANDUM OPINION[1]

                                         ------------ 


Introduction








Appellant John Celestino
Villareal appeals his conviction for aggravated assault with a deadly
weapon.  In two issues, he contends that
the trial court erred by denying his request for an instruction on the defense
of necessity and that the State violated due process by withholding exculpatory
evidence.  We affirm.

Factual Background

At approximately 2:00 a.m. on
November 6, 2004, appellant and Kerry Barnes began to argue inside a club
called Flash Dancers.  Barnes told
appellant that they could settle things by fighting outside.  Cameron Green, Barnes=s cousin, and LaShanda Garlin, appellant=s girlfriend, joined the men outside. 
As the argument continued outside the club, a crowd formed around the
men. According to Barnes, appellant started talking about Agoing to his trunk@ leading Barnes to believe that appellant was going to get a gun.  Barnes was not armed and denied threatening
appellant with a weapon.  According to
appellant, however, Barnes said, AWe=re going to
fuck you up, and fuck your bitch.@ Appellant was near his car in the parking lot, when Athey@ moved
toward appellant and someone pushed Garlin to the ground.  Appellant then jumped around his car, reached
into it, grabbed his .40 caliber Glock Model 27 pistol, and fired approximately
two shots.[2]  








After the first round of
shots, appellant pointed the Glock at Barnes. According to appellant, all but
four people in Barnes=s group ran
away.  Barnes and Green remained, and
appellant heard one of them say, AYou ain=t the only one
with a gun.  We don=t give a fuck if you=ve got a gun.  We=re still going to whip you[.]@  At that point, appellant put
Garlin in the car, and she warned appellant that the men were coming back.  Appellant saw Barnes Arun back and [say] something like >What the fuck now,= and . . . put his hands toward his waist and his hands [are] in the
air.@  Appellant understood that to
mean that Barnes had a gun and was Agoing to come back and fire@ at him.  In response, appellant
fired approximately three to four more shots. 
One of the bullets hit Green in the arm. 
Appellant testified that he fired all of the shots into the air. Crime
scene investigators recovered seven expended cartridges from the area. 

Appellant was charged with
aggravated assault with a deadly weapon. 
A jury found him guilty as charged and assessed his punishment at two
years= imprisonment.

Necessity Defense Instruction

In his first issue, appellant
asserts that the trial court erred by denying his request for a jury
instruction on the defense of necessity because, according to appellant, the
evidence shows that he reasonably believed firing the second round of shots was
immediately necessary to prevent Barnes from harming him and Garlin and that
the urgency of avoiding the harm outweighed the harm of firing a gun into the
air.  








The Texas Penal Code sets
forth the basic two‑prong test a defendant must satisfy in order to be
entitled to a jury instruction on the defense of necessity.[3]  First, a defendant is required to present
evidence that he reasonably believed a specific harm was imminent.[4]  AImminent@ means
something that is impending, not pending; something that is on the point of
happening, not about to happen.[5]  Harm is imminent when there is an emergency
situation and it is Aimmediately
necessary@ to avoid
that harm.[6]  In other words, a split‑second decision
is required without time to consider the law.[7]








Second, a defendant must
present evidence that he reasonably believed the criminal conduct was
immediately necessary to avoid the imminent harm.[8]
AReasonable belief@ means a belief that would be held by an ordinary and prudent man in
the same circumstances as the actor.[9]  As a general rule, determination of the
reasonableness of an accused=s belief is a question of fact and should be viewed from the accused=s standpoint at the time he acted.[10]  

Section 9.05 of the penal
code, however, precludes any justification defense when an actor injures or
kills an innocent third party.[11]  Specifically, section 9.05 states:

Even
though an actor is justified under this chapter in threatening or using force
or deadly force against another, if in doing so he  also recklessly injures or kills an innocent
third person, the justification afforded by this chapter is unavailable in a
prosecution for the reckless injury or killing of the innocent third person.

 








In reviewing the evidence in
a light favorable to appellant in this case,[12]
we conclude that it does not raise the issue of necessity.  According to appellant, it was Barnes who
cursed at Garlin and Barnes who threatened to fight appellant.  Appellant stated that he could not identify
the person who prompted appellant to retrieve his Glock from his truck by
allegedly knocking Garlin down outside the club.  While appellant speculated that it could have
been Green, he established through his own testimony that it was Green who attempted
to diffuse the argument between appellant and Barnes after appellant fired the
first round of shots.  Appellant
unequivocally testified, AI do
remember [Green] pulling [Barnes] back and saying, >No, no, let=s go.=@  This apparently occurred
before appellant fired the second round of shots and wounded Green.  Furthermore, there is no evidence that would
support a conclusion that appellant felt that it was necessary to use deadly
force against Green or that Green was anything other than an innocent third
party.  Therefore, section 9.05 precluded
an instruction on any justification defense, and the trial court did not
reversibly err by denying Appellant=s request for an instruction on necessity.[13]

We overrule Appellant=s first issue.








Exculpatory Evidence 

In his
second issue, appellant contends that the prosecutor violated his due process
rights by failing to timely disclose an allegedly exculpatory statement given
to the police by Andres Martinez.  As a
result, appellant was unable to secure Martinez as a witness at trial, and the
trial court denied appellant=s request to admit Martinez=s statement into evidence. 
Although appellant concedes that the State maintained an open file
policy, he asserts that the State had an additional burden to make the
statement available to him before trial because it was contained in a voluminous
file.








Appellant discovered Martinez=s statement the first day of trial, 
September 27, 2005, when appellant=s trial counsel asked the prosecutor for a copy of one of the police
officer=s reports.  At that point, the
State had called five of its eight witnesses in its case in chief.  On September 28, 2005, at a hearing outside
the jury=s presence, appellant asked the trial court to admit Martinez=s exculpatory statement because it was not timely tendered to
appellant prior to trial, or, in the alternative, to grant him a continuance so
that he could issue a subpoena to bring Martinez to trial.  The State responded that appellant had access
to Martinez=s statement
before trial due to its open file policy, the statement was cumulative of the
other witnesses= testimony
and not exculpatory, and the statement was not material to appellant=s case.  The trial court granted
appellant a short continuance, issued the subpoena, and refused to admit Martinez=s statement at that time.  

Appellant was unable,
however, to serve the subpoena on Martinez within the time the trial court
allotted him.  Consequently, after the
defense rested, appellant requested that Martinez=s statement be admitted into evidence, and the trial court denied his
request.  

The Due Process Clause of the
Fourteenth Amendment to the United States Constitution is violated when a
prosecutor fails to disclose evidence favorable to the accused that creates a
probability sufficient to undermine confidence in the outcome of the
proceeding.[14]  To establish a due process violation under Brady
v. Maryland,[15]
a defendant must show that the evidence was suppressed, the suppressed evidence
was favorable to the defense, and the suppressed evidence was material to either
guilt or punishment.[16]








The first element of Brady
is present if the prosecution actively suppresses evidence or negligently fails
to disclose it.[17]  Generally, the State satisfies its duty to
disclose exculpatory evidence by maintaining an open file policy.[18]  The State is not required to seek out
evidence for the defendant=s use.[19]  Thus, without suppression, there is no Brady
violation.[20]









In this case, we conclude
that the State did not suppress or negligently fail to disclose Martinez=s statement.  Appellant knew
that a police report had been prepared and thus could reasonably expect that
any eyewitness statements, exculpatory or inculpatory, would be included in
such a report.[21]  There is no evidence that the prosecutor
attempted to hide Martinez=s statement from appellant.  The
undisputed evidence is that Martinez=s statement, birth date, license plate number, and place of work were
included in the police report contained in the State=s file and that there was an Aopen file@
policy.  Because appellant has failed to
show that the prosecution suppressed Martinez=s statement, there was no Brady violation in this case, and the
trial court did not err by refusing to admit Martinez=s statement into evidence.  We
overrule appellant=s second
issue.  

Conclusion

Having overruled appellant=s two issues, we affirm the trial court=s judgment.

PER CURIAM

PANEL
A:  CAYCE, C.J.; WALKER and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

DELIVERED:  May 17, 2007











[1]See Tex. R. App. P. 47.4.





[2]Appellant
did not have a license to carry a concealed handgun.





[3]Tex. Penal Code Ann. '
9.22(1)-(3) (Vernon 1994); see also id. ' 9.02
(providing, A[i]t
is a defense to prosecution that the conduct in question is justified under
this chapter@).





[4]See
id. '
9.22(1); Johnson v. State, 650 S.W.2d 414, 416 (Tex. Crim. App. 1983) overruled
on other grounds by Boget v. State, 74 S.W.3d 23 (Tex. Crim. App.
2002); Brazelton v. State, 947 S.W.2d 644, 648 (Tex. App.CFort
Worth 2001, no pet.). 





[5]Jackson
v. State, 50 S.W.3d 579, 594‑95 (Tex. App.CFort
Worth 2001, pet. ref=d); Smith
v. State, 874 S.W.2d 269, 272‑73 (Tex. App.CHouston
[14th Dist.] 1994, pet. ref=d), abrogated on other
grounds by Clewis v. State, 922 S.W.2d 126 (Tex. Crim. App. 1996). 





[6]Jackson, 50
S.W.3d at 594‑95; Smith, 874 S.W.2d at 273.





[7]Jackson, 50
S.W.3d at 594‑95; Smith, 874 S.W.2d at 273.





[8]See Tex. Penal Code Ann. '
9.22(1); Brazelton, 947 S.W.2d at 648. 





[9]Tex. Penal Code Ann. '
1.07(a)(42) (Vernon 1994). 





[10]Fitzgerald
v. State, 782 S.W.2d 876, 885 (Tex. Crim. App. 1990); Brazelton,
947 S.W.2d at 648; Juarez v. State, 886 S.W.2d 511, 514 (Tex. App.CHouston
[1st Dist.] 1994, pet. ref=d).





[11]Banks
v. State, 955 S.W.2d 116, 118 (Tex. App.CFort
Worth 1997, no pet.). 





[12]Pennington
v. State, 54 S.W.3d 852, 856 (Tex. App.CFort
Worth 2001, pet. ref=d)
(citing Hayes v. State, 728 S.W.2d 804, 807 (Tex. Crim. App. 1987)); see
Hamel v. State, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996). 





[13]The
charge did, however, include an instruction on self-defense and defense of
third persons.  Thus, appellant has
already been Abestowed
a benefit@ by
having the State=s
burden unnecessarily Aheightened@ by
having to disprove self-defense and defense of third persons beyond a
reasonable doubt.  Banks, 955
S.W.2d at 117. 





[14]Thomas
v. State, 841 S.W.2d 399, 404 (Tex. Crim. App. 1992).





[15]373
U.S. 83, 83 S. Ct. 1194 (1963).





[16]Id. at
87, 83 S. Ct. At 1196-97; Taylor v. State, 93 S.W.3d 487, 498‑99
(Tex. App.CTexarkana
2002, pet. ref=d).





[17]Juarez
v. State, 439 S.W.2d 346, 348 (Tex. Crim. App. 1969);
Smith v. State, 840 S.W.2d 689, 693 (Tex. App.CFort
Worth 1992, pet. ref=d); see
also Taylor, 93 S.W.3d at 499. 





[18]See
Harm v. State, 183 S.W.3d 403, 407 (Tex. Crim. App. 2006); Givens
v. State, 749 S.W.2d 954, 957 (Tex. App.CFort Worth 1988, pet. ref=d). 





[19]Staten
v. State, 919 S.W.2d 493, 498 (Tex. App.CFort
Worth 1996, pet. ref=d); Taylor,
93 S.W.3d at 499; Palmer v. State, 902 S.W.2d 561, 563 (Tex. App.CHouston
[1st Dist.] 1995, no pet.); see also United States v. Bagley, 473
U.S. 667, 675, 105 S. Ct. 3375, 3379‑80 (1985) (Apurpose
[of the Brady rule] is not to displace the adversary system@ and
prosecutor is Anot
required to deliver his entire file to defense counsel, but only to disclose
evidence favorable to the accused@).





[20]Taylor, 93
S.W.3d at 499.





[21]Cf.
Vega v. State, 898 S.W.2d 359, 362 (Tex. App.CSan
Antonio 1995, pet. ref=d)
(stating that when defense counsel knew that handwashing  specimens had been taken, counsel could
reasonably expect that a report would be forthcoming and therefore, the State=s
open file policy satisfied its duty under Brady).