COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-380-CR

JOHN CELESTINO VILLAREAL APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM 
OPINION
(footnote: 1)
  ------------  

Introduction

Appellant John Celestino Villareal appeals his conviction for aggravated assault with a deadly weapon.  In two issues, he contends that the trial court erred by denying his request for an instruction on the defense of necessity and that the State violated due process by withholding exculpatory evidence.  We affirm.

Factual Background

At approximately 2:00 a.m. on November 6, 2004, appellant and Kerry Barnes began to argue inside a club called Flash Dancers.  Barnes told appellant that they could settle things by fighting outside.  Cameron Green, Barnes’s cousin, and LaShanda Garlin, appellant’s girlfriend, joined the men outside.  As the argument continued outside the club, a crowd formed around the men. According to Barnes, appellant started talking about “going to his trunk” leading Barnes to believe that appellant was going to get a gun.  Barnes was not armed and denied threatening appellant with a weapon.  According to appellant, however, Barnes said, “We’re going to fuck you up, and fuck your bitch.” Appellant was near his car in the parking lot, when “they” moved toward appellant and someone pushed Garlin to the ground.  Appellant then jumped around his car, reached into it, grabbed his .40 caliber Glock Model 27 pistol, and fired approximately two shots.
(footnote: 2)  

After the first round of shots, appellant pointed the Glock at Barnes. According to appellant, all but four people in Barnes’s group ran away.  Barnes and Green remained, and appellant heard one of them say, “You ain’t the only one with a gun.  We don’t give a fuck if you’ve got a gun.  We’re still going to whip you[.]”  At that point, appellant put Garlin in the car, and she warned appellant that the men were coming back.  Appellant saw Barnes “run back and [say] something like ‘What the fuck now,’ and . . . put his hands toward his waist and his hands [are] in the air.”  Appellant understood that to mean that Barnes had a gun and was “going to come back and fire” at him.  In response, appellant fired approximately three to four more shots.  One of the bullets hit Green in the arm.  Appellant testified that he fired all of the shots into the air. Crime scene investigators recovered seven expended cartridges from the area. 

Appellant was charged with aggravated assault with a deadly weapon.  A jury found him guilty as charged and assessed his punishment at two years’ imprisonment.

Necessity Defense Instruction

In his first issue, appellant asserts that the trial court erred by denying his request for a jury instruction on the defense of necessity because, according to appellant, the evidence shows that he reasonably believed firing the second round of shots was immediately necessary to prevent Barnes from harming him and Garlin and that the urgency of avoiding the harm outweighed the harm of firing a gun into the air.  

The Texas Penal Code sets forth the basic two-prong test a defendant must satisfy in order to be entitled to a jury instruction on the defense of necessity.
(footnote: 3)  First, a defendant is required to present evidence that he reasonably believed a specific harm was imminent.
(footnote: 4)  “Imminent” means something that is impending, not pending; something that is on the point of happening, not about to happen.
(footnote: 5)  Harm is imminent when there is an emergency situation and it is “immediately necessary” to avoid that harm.
(footnote: 6)  In other words, a split-second decision is required without time to consider the law.
(footnote: 7)
 Second, a defendant must present evidence that he reasonably believed the criminal conduct was immediately necessary to avoid the imminent harm.
(footnote: 8) “Reasonable belief” means a belief that would be held by an ordinary and prudent man in the same circumstances as the actor.
(footnote: 9)  As a general rule, determination of the reasonableness of an accused’s belief is a question of fact and should be viewed from the accused’s standpoint at the time he acted.
(footnote: 10)  

Section 9.05 of the penal code, however, precludes any justification defense when an actor injures or kills an innocent third party.
(footnote: 11)  Specifically, section 9.05 states:

Even though an actor is justified under this chapter in threatening or using force or deadly force against another, if in doing so he  also recklessly injures or kills an innocent third person, the justification afforded by this chapter is unavailable in a prosecution for the reckless injury or killing of the innocent third person.

In reviewing the evidence in a light favorable to appellant in this case,
(footnote: 12) we conclude that it does not raise the issue of necessity.  According to appellant, it was Barnes who cursed at Garlin and Barnes who threatened to fight appellant.  Appellant stated that he could not identify the person who prompted appellant to retrieve his Glock from his truck by allegedly knocking Garlin down outside the club.  While appellant speculated that it could have been Green, he established through his own testimony that it was Green who attempted to diffuse the argument between appellant and Barnes after appellant fired the first round of shots.  Appellant unequivocally testified, “I do remember [Green] pulling [Barnes] back and saying, ‘No, no, let’s go.’”  This apparently occurred before appellant fired the second round of shots and wounded Green.  Furthermore, there is no evidence that would support a conclusion that appellant felt that it was necessary to use deadly force against Green or that Green was anything other than an innocent third party.  Therefore, section 9.05 precluded an instruction on any justification defense, and the trial court did not reversibly err by denying Appellant’s request for an instruction on necessity.
(footnote: 13)
 We overrule Appellant’s first issue.

Exculpatory Evidence 

In his second issue, appellant contends that the prosecutor violated his due process rights by failing to timely disclose an allegedly exculpatory statement given to the police by Andres Martinez.  As a result, appellant was unable to secure Martinez as a witness at trial, and the trial court denied appellant’s request to admit Martinez’s statement into evidence.  Although appellant concedes that the State maintained an open file policy, he asserts that the State had an additional burden to make the statement available to him before trial because it was contained in a voluminous file.

Appellant discovered Martinez’s statement the first day of trial,  September 27, 2005, when appellant’s trial counsel asked the prosecutor for a copy of one of the police officer’s reports.  At that point, the State had called five of its eight witnesses in its case in chief.  On September 28, 2005, at a hearing outside the jury’s presence, appellant asked the trial court to admit Martinez’s exculpatory statement because it was not timely tendered to appellant prior to trial, or, in the alternative, to grant him a continuance so that he could issue a subpoena to bring Martinez to trial.  The State responded that appellant had access to Martinez’s statement before trial due to its open file policy, the statement was cumulative of the other witnesses’ testimony and not exculpatory, and the statement was not material to appellant’s case.  The trial court granted appellant a short continuance, issued the subpoena, and refused to admit Martinez’s statement at that time.  

Appellant was unable, however, to serve the subpoena on Martinez within the time the trial court allotted him.  Consequently, after the defense rested, appellant requested that Martinez’s statement be admitted into evidence, and the trial court denied his request.  

The Due Process Clause of the Fourteenth Amendment to the United States Constitution is violated when a prosecutor fails to disclose evidence favorable to the accused that creates a probability sufficient to undermine confidence in the outcome of the proceeding.
(footnote: 14)  To establish a due process violation under 
Brady v. Maryland
,
(footnote: 15) a defendant must show that the evidence was suppressed, the suppressed evidence was favorable to the defense, and the suppressed evidence was material to either guilt or punishment.
(footnote: 16)
 The first element of 
Brady
 is present if the prosecution actively suppresses evidence or negligently fails to disclose it.
(footnote: 17)  Generally, the State satisfies its duty to disclose exculpatory evidence by maintaining an open file policy.
(footnote: 18)  The State is not required to seek out evidence for the defendant’s use.
(footnote: 19)  Thus, without suppression, there is no 
Brady
 violation.
(footnote: 20) 

In this case, we conclude that the State did not suppress or negligently fail to disclose Martinez’s statement.  Appellant knew that a police report had been prepared and thus could reasonably expect that any eyewitness statements, exculpatory or inculpatory, would be included in such a report.
(footnote: 21)  There is no evidence that the prosecutor attempted to hide Martinez’s statement from appellant.  The undisputed evidence is that Martinez’s statement, birth date, license plate number, and place of work were included in the police report contained in the State’s file and that there was an “open file” policy.  Because appellant has failed to show that the prosecution suppressed Martinez’s statement, there was no 
Brady
 violation in this case, and the trial court did not err by refusing to admit Martinez’s statement into evidence.  We overrule appellant’s second issue.  

Conclusion

Having overruled appellant’s two issues, we affirm the trial court’s judgment.

PER CURIAM

PANEL A:  CAYCE, C.J.; WALKER and MCCOY, JJ.

DO NOT PUBLISH 

Tex. R. App. P.
 47.2(b)

DELIVERED:  May 17, 2007 
 
                                                                                                                                                                                                                             

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Appellant did not have a license to carry a concealed handgun.

3:
Tex. Penal Code Ann. 
§ 9.22(1)-(3) (Vernon 1994); 
see also id.
 § 9.02 (providing, “[i]t is a defense to prosecution that the conduct in question is justified under this chapter”).

4:
See id.
 § 9.22(1); 
Johnson v. State
, 650 S.W.2d 414, 416 (Tex. Crim. App. 1983) 
overruled on other grounds by
 
Boget v. State
, 74 S.W.3d 23 (Tex. Crim. App. 2002); 
Brazelton v. State
, 947 S.W.2d 644, 648 (Tex. App.—Fort Worth 2001, no pet.). 

5:
Jackson v. State
, 50 S.W.3d 579, 594-95 (Tex. App.—Fort Worth 2001, pet. ref’d); 
Smith v. State
, 874 S.W.2d 269, 272-73 (Tex. App.—Houston [14th Dist.] 1994, pet. ref’d), 
abrogated on other grounds by
 
Clewis v. State
, 922 S.W.2d 126 (Tex. Crim. App. 1996). 

6:
Jackson
, 50 S.W.3d at 594-95; 
Smith
, 874 S.W.2d at 273.

7:
Jackson
, 50 S.W.3d at 594-95; 
Smith
, 874 S.W.2d at 273.

8:
See 
Tex. Penal Code Ann. 
§ 9.22(1); 
Brazelton
, 947 S.W.2d at 648. 

9:
Tex. Penal Code Ann.
 § 1.07(a)(42) (Vernon 1994). 

10:
Fitzgerald v. State,
 782 S.W.2d 876, 885 (Tex. Crim. App. 1990); 
Brazelton
, 947 S.W.2d at 648; 
Juarez v. State
, 886 S.W.2d 511, 514 (Tex. App.—Houston [1st Dist.] 1994, pet. ref’d).

11:
Banks v. State
, 955 S.W.2d 116, 118 (Tex. App.—Fort Worth 1997, no pet.). 

12:
Pennington v. State
, 54 S.W.3d 852, 856 (Tex. App.—Fort Worth 2001, pet. ref’d) (citing 
Hayes v. State
, 728 S.W.2d 804, 807 (Tex. Crim. App. 1987)); 
see Hamel v. State
, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996).
 

13:
The charge did, however, include an instruction on self-defense and defense of third persons.  Thus, appellant has already been “bestowed a benefit” by having the State’s burden unnecessarily “heightened” by having to disprove self-defense and defense of third persons beyond a reasonable doubt.  
Banks
, 955 S.W.2d at 117. 

14:
Thomas v. State
, 841 S.W.2d 399, 404 (Tex. Crim. App. 1992).

15:
373 U.S. 83, 83 S. Ct. 1194 (1963).

16:
Id
. at 87, 83 S. Ct. At 1196-97; 
Taylor v. State
, 93 S.W.3d 487, 498-99 (Tex. App.—Texarkana 2002, pet. ref’d).

17:
Juarez v. State
, 439 S.W.2d 346, 348 (Tex. Crim. App. 1969);
 Smith v. State
, 840 S.W.2d 689, 693 (Tex. App.—Fort Worth 1992, pet. ref’d); 
see also Taylor,
 93 S.W.3d at 499. 

18:
See Harm v. State
, 183 S.W.3d 403, 407 (Tex. Crim. App. 2006); 
Givens v. State
, 749 S.W.2d 954, 957 (Tex. App.—Fort Worth 1988, pet. ref’d). 

19:
Staten v. State
, 919 S.W.2d 493, 498 (Tex. App.—Fort Worth 1996, pet. ref’d); 
Taylor,
 93 S.W.3d at 499; 
Palmer v. State
, 902 S.W.2d 561, 563 (Tex. App.—Houston [1st Dist.] 1995, no pet.); 
see also
 
United States v. Bagley,
 473 U.S. 667, 675, 105 S. Ct. 3375, 3379-80 (1985) (“purpose [of the 
Brady
 rule] is not to displace the adversary system” and prosecutor is “not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused”).

20:
Taylor,
 93 S.W.3d at 499.

21:
Cf. Vega v. State
, 898 S.W.2d 359, 362 (Tex. App.—San Antonio 1995, pet. ref’d) (stating that when defense counsel knew that handwashing  specimens had been taken, counsel could reasonably expect that a report would be forthcoming and therefore, the State’s open file policy satisfied its duty under 
Brady
).