# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00483-CR

**Kenric Leal Marshall, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
### NO. D-1-DC-07-202057, HONORABLE FRED A. MOORE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Kenric Leal Marshall of unauthorized use of a motor vehicle, enhanced to a third-degree felony by three prior convictions, and the trial court assessed punishment at five years' imprisonment. *See* Tex. Penal Code Ann. §§ 12.42(a)(1) (West Supp. 2009), 31.07 (West 2003). On appeal, Marshall raises five complaints: (1) the trial court erred in not giving the jury an instruction on necessity; (2) the State misstated the law during voir dire, which resulted in an impermissible shifting of the burden from the State to Marshall; (3) the trial court should have granted Marshall's *Batson* challenge; (4) Marshall received ineffective assistance of counsel at trial; and (5) Marshall's rights were violated when he was required to appear before the jury in shackles. We affirm the trial court's judgment of conviction.

## Factual Summary

Between 9:00 and 10:00 p.m. on April 16, 2007, siblings Eneda and Manuel Espinoza were at their apartment in north Austin. Manuel was outside the apartment when he saw someone running toward him. Concerned, Manuel started to go inside, but the person, identified at trial as Marshall, pushed by him and ran into the apartment. The siblings testified that Marshall told them that he had been beaten and chased and asked them to let him stay for a few minutes. Eneda said Marshall seemed very upset and frightened. The Espinozas said several times that they should call the police to report the attack, but Marshall asked them not to, explaining that "he had had problems with the police and he didn't want to go to jail." Marshall did not ask for a ride, to use the phone, or to have the Espinozas call anyone on his behalf and asked only if he could use the bathroom. After about ten minutes, Marshall asked the siblings to see if his attackers were still there. The Espinozas went outside but did not see anyone, so Marshall left the apartment. Manuel testified that he watched Marshall leave and that he crossed the street, walking normally, and disappeared through some trees.

About ten minutes after Marshall left, Manuel went out to the parking lot because he had go to the store for an errand. He heard his sister's Jeep's alarm going off and saw two people inside the vehicle. The Jeep drove away, so Manuel got into his truck and started to follow, calling the police as he drove. He discontinued his pursuit when instructed by the police that it might be dangerous. Manuel testified that no one was chasing the people who took his sister's vehicle. Eneda said she did not realize Marshall had taken the car until the next day, when she realized her keys were missing from her apartment. Officer Juan Mata testified that he spotted the stolen vehicle about

2

three miles from the Espinozas' apartment complex at about 3:45 a.m. on April 17. Marshall was driving and had a female passenger with him; Mata arrested Marshall and let the passenger go. Eneda said her vehicle was not damaged and nothing was missing from inside.

Marshall testified that on the evening of April 16, he accidentally threw away his bus day-pass and had used up all of his money at a restaurant. When he tried to call friends for a ride, he only reached one person, and that friend was unable to come get him. Marshall then waited at a bus stop, trying to solicit bus fare to get home. As he waited, two young men, about fourteen or fifteen years' old, turned their attention to Marshall. Marshall testified that he was worried because they were talking "how young black guys talk, N this, N that, what's up," and because they were wearing blue and black clothing, which Marshall said identified them as members of the Crips gang. Marshall told the young men that he did not want any trouble, but they pulled out a cell phone to summon two friends, one of whom "just straight hit" Marshall in the mouth. Marshall tried to fight them off, but then heard the phone "chirp" again and saw two more men approach. Marshall turned and ran, chased by the six men, who yelled that they were going to "F you up." Marshall broke through a fence and picked up a board, but when two of the pursuers did the same, Marshall dropped the board and ran into a nearby apartment complex. He saw Manuel Espinoza and started to run toward him. Marshall said he ran past Espinoza into the apartment because he had recently had stitches and was afraid of being beaten up. Marshall said he asked the Espinozas not to call the police because of bad past experiences.

Marshall testified that he took Eneda's keys on an impulse, saying that while the siblings were outside looking for Marshall's attacker, he noticed the keys and picked them up to use

3

as a weapon if necessary. He left the apartment and figured out which vehicle went with the keys by beeping the alarm; he testified, "I just checked to see which one it was just in case I needed it. I didn't intend to actually take it." Marshall saw two of his attackers on the other side of the street, and when they saw him, they started "coming at me, not chasing me, coming at me," so he got into the Jeep and drove off. Marshall testified that after taking the car, he drove for about twenty minutes and then parked near a friend's house for about two hours, thinking about what to do. He decided to go home to ask his mother's advice, but he was stopped by Officer Mata before he got there.

Marshall said he picked up his passenger later, shortly before Mata arrested Marshall. He admitted that he told Mata a friend had loaned him the car. Marshall said he was not planning to sell or steal anything from the car but that "all I could think about was getting to safety, sir." Marshall said Manuel Espinoza "wasn't being honest" in his testimony that he watched Marshall cross the street and walk away and denied that there was anyone with him when he took the Jeep.

**Discussion**

In his first issue, Marshall asserts that the trial court erred in refusing to give a jury instruction on the defense of necessity. He contends that, when viewed in a light most favorable to his defense, the evidence sufficiently raised each element of necessity.

Generally, a criminal defendant is entitled to a jury instruction on any claimed defense if the evidence is sufficient to raise each element of the defense. *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999); *Stefanoff v. State*, 78 S.W.3d 496, 499 (Tex. App.—Austin 2002, pet. ref'd). If the evidence is such that a rational juror could accept it as sufficient to prove an element of the defense, it is considered to "raise" that element. *Stefanoff*, 78 S.W.3d at 499. The

4

credibility, source, or strength of the evidence is not material, and the defendant's testimony alone is sufficient to raise a defensive issue. *Id.* If the evidence does not raise every element of a defense, the trial court may refuse an instruction properly and timely requested by the defendant. *Id.* at 500. In our consideration of whether a trial court erred in denying a requested instruction, we view the evidence supportive of the defensive issue in the light most favorable to the defense. *Id.*

The defense of necessity excuses otherwise illegal conduct if:

(1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;

(2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and

(3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

Tex. Penal Code Ann. § 9.22 (West 2003). Thus, to be entitled to an instruction on the defense of necessity, a defendant must first bring forth evidence that he reasonably believed a specific harm was imminent. *Pennington v. State*, 54 S.W.3d 852, 857 (Tex. App.—Fort Worth 2001, pet. ref'd). "'Harm' means anything reasonably regarded as loss, disadvantage, or injury," "'[i]mminent' means something that is immediate, something that is going to happen now," and "imminent harm contemplates a reaction to a circumstance that must be the result of a 'split-second decision [made] without time to consider the law.'" *Stefanoff*, 78 S.W.3d at 500-01 (quoting Tex. Penal Code Ann. § 1.07(a)(25) (West Supp. 2009); *Smith v. State*, 874 S.W.2d 269, 272-73 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd)); *see Pennington*, 54 S.W.3d at 857 (imminent means "impending, not

5

pending; something that is on the point of happening, not about to happen," "[h]arm is imminent when there is an emergency situation and it is 'immediately necessary' to avoid that harm," and evidence must show that "a split-second decision [was] required without time to consider the law").

If evidence of a specific, imminent harm is presented, the defendant must next present evidence that he reasonably believed his criminal conduct "was *immediately necessary* to avoid the imminent harm." *Pennington*, 54 S.W.3d at 857. "'Reasonable belief' means a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." *Id.* (citing Tex. Penal Code Ann. § 1.07(a)(42)). If there is evidence raising every element of the defense, regardless of the source or strength of the evidence, the question of necessity should be submitted to the jury, and the State must disprove the defense beyond a reasonable doubt. Tex. Penal Code Ann. § 2.03(d) (West 2003); *see Stefanoff*, 78 S.W.3d at 500.

When the facts are viewed as a whole, at the time Marshall took Espinoza's car keys, he was safe inside the Espinozas' apartment and in no immediate danger. He had numerous options open to him, including calling the police, calling a friend or family member for a ride, asking the Espinozas to drive him somewhere, or asking the Espinozas to give him bus fare to get home. He did none of those things and instead took the keys while the Espinozas, on Marshall's request, went outside to check for danger, and then went looking for her vehicle. At the time he took the vehicle, Marshall's testimony was that he saw two gang members "coming at" him but that they were across the street and were not chasing him. Thus, when Marshall took Eneda's keys, got into her vehicle, and drove away, there was no evidence that he was in danger of imminent harm and that he could not simply have returned to the Espinozas' apartment to ask them for further help. In other words,

6

there was no evidence to show that Marshall was required by the circumstances to make a split-second decision to take the car without taking the time to consider the law. *See Stefanoff*, 78 S.W.3d at 500-01 (quoting *Smith*, 874 S.W.2d at 272-73).

We further note that Marshall was indicted for unauthorized use of a motor vehicle on or about April 17, the day he was arrested and the day *after* he initially took the car. Marshall testified that his confrontation with the gang members occurred between 9:00 and 10:00 p.m. on April 16, and he was arrested about six hours later, at 3:45 a.m. on April 17. By that point, any danger was long passed, yet Marshall was still using Eneda Espinoza's Jeep Cherokee. There was no evidence to support a jury charge on necessity for April 17, as charged in the indictment.

Under these facts, the trial court did not err in refusing to include an instruction on necessity in the jury charge. We overrule Marshall's first issue on appeal.

In his third issue, Marshall, who is African-American, complains that the trial court erred in overruling Marshall's *Batson*[1] challenge to the State's striking of an African-American venire member. At trial, Marshall objected to the State's striking of panelist number 18, noting that of two black males within the strike zone, the State had struck one of them. The State responded that the panelist was struck because "we have in our criminal history of him that he was arrested for burglary" and "also he was wearing an earring in the courtroom." The State explained that its records showed that a person with the same name and date of birth was arrested for attempted burglary in 1980. The trial court asked if Marshall had any questions, and counsel said he had no questions but argued that "the State certainly had an opportunity to bring that juror up before the

---

[1] *See Batson v. Kentucky*, 476 U.S. 79 (1986).

7

Court" but "did not avail itself of that opportunity to talk to him, which leaves the fact that he had an earring. But we feel that the strike was because he is a black male. The State did not even question him about whether or not he was the same individual."

"There is a three-step process for advancing a *Batson* claim: (1) The objecting party must make a *prima facie* case of discrimination, (2) once a *prima facie* case is made, the striking party must tender race-neutral reasons for the strike, and (3) if race-neutral reasons are tendered, the objecting party must prove purposeful discrimination." *Johnson v. State*, 68 S.W.3d 644, 649 (Tex. Crim. App. 2002). "The trial court's determination is accorded great deference and will not be overturned on appeal unless it is clearly erroneous." *Jasper v. State*, 61 S.W.3d 413, 422 (Tex. Crim. App. 2001); *see Johnson*, 68 S.W.3d at 649 ("Appellate courts must give great deference to credibility and demeanor determinations made by the trial court in connection with a *Batson* inquiry."). "'Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.'" *Purkett v. Elem*, 514 U.S. 765, 768 (1995) (quoting *Hernandez v. New York*, 500 U.S. 352, 360 (1991) (plurality op.)).

After Marshall objected that one of two black, male panelists had been struck by the State, the State provided two reasons: an old arrest record for someone with the same name and birthday and the fact that the panelist was wearing an earring. Neither of those reasons is inherently discriminatory. After hearing the State's explanations, Marshall argued that the State should have questioned the panelist further to determine whether it was the same person, but it was not the State's burden to prove its race-neutral explanation. Instead, it was Marshall's burden to negate the State's proffered explanations, proving purposeful discrimination in the State's strike. *See Johnson*,

8

68 S.W.3d at 649 (State gave several race-neutral reasons for strike, including records showing that person with same name and birthday was arrested for driving while license was suspended, and defendant complained that State should have been required to inquire further and ask panelist whether had been arrested; court held that, "[a]s the party making the *Batson* challenge, appellant had the burden to show that the explanation given was merely a pretext for discrimination. It is not enough merely to show that a proffered explanation turns out to be incorrect. . . . Here, appellant has failed to prove that the prosecutor's explanation was incorrect, much less that it was a pretext for discrimination." (footnotes omitted)). Marshall did not carry his burden of rebutting the State's race-neutral reasons for striking panelist number 18. Deferring to the trial court's determinations of credibility and demeanor, we hold that the court did not err in overruling Marshall's *Batson* challenge. We overrule Marshall's third issue.

In his second issue, Marshall argues that the State misstated the law during voir dire, which resulted in an improper shifting of the burden of proof. However, Marshall's trial attorney did not object to the prosecutor's statements, and, therefore, this argument is waived.[2] *See* Tex. R. App. P. 33.1(a); *Norris v. State*, 902 S.W.2d 428, 446 (Tex. Crim. App. 1995). We overrule Marshall's second issue.

---

[2] Marshall contends that the error rose to "constitutional dimensions" and should be evaluated even though counsel did not object at trial. We disagree. Generally, a defendant's failure to make a timely objection waives an alleged error. Tex. R. App. P. 33.1(a). Only in the case of fundamental or structural error is an unobjected-to error preserved for appeal. *See Arizona v. Fulminante*, 499 U.S. 279, 309-10 (1991); *Rey v. State*, 897 S.W.2d 333, 344-45 (Tex. Crim. App. 1995); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). Marshall does not explain how the prosecutor's fairly minor statements amounted to structural or fundamental error. Marshall also asserts that if we find this alleged error was waived, we should consider that waiver in our consideration of his fourth issue, which asserts that he received ineffective assistance of counsel.

In his fourth issue, Marshall contends that he received ineffective assistance of counsel at trial. Specifically, he attacks counsel's failure to object to the State's voir dire statements comparing the information a criminal defendant can acquire from the State to the information the State may acquire from the defense and counsel's failure to object to the trial court's refusal to allow Marshall to testify about his mental health background.[3]

During voir dire, the prosecutor stated:

The difference is that the defendant can look at my file, and our policy in Travis County is they can look at everything I have in my file. Does anyone think that I have the same right to look in his file? . . . That's right, I don't. I don't know what defense they are going to bring. I don't have the right to look at his attorney's file, but they have the right to look at ours. So it is a little bit different than civil law where there are rules that people get to look at what the defenses might be, what their cause of action might be. In criminal, we don't have that same right to look at their discovery, we call it, but they can look at everything in our file. And it's our policy at the Travis County DA's Office to let them do that.[4]

Counsel did not object to the prosecutor's statements and thus waived any error, and Marshall argues that this shows he received ineffective assistance of counsel. Marshall contends that the prosecutor's

---

[3] Marshall also asserts ineffective assistance related to counsel's failure to cite to case law or statute in arguing for a necessity instruction in the jury charge. However, counsel's argument related to the instruction, which we have already addressed, sufficiently preserved error, and we will not consider Marshall's argument in reviewing counsel's effectiveness.

[4] Marshall argues that because the prosecutor stated that a criminal defendant can subpoena witnesses just before his misstatement about what the defendant and State can obtain from each other, the State "impl[ied] that the Defendant had an unfair advantage over the state." He argues that the "improper burden shifting" was compounded when the defense did not call any witnesses other than Marshall himself, leading the jury to believe the State's case was stronger than Marshall's. We disagree and see nothing in the prosecutor's true statement about a defendant's subpoena power that, whether read in isolation or in context of the entire voir dire or the entire trial, leads to an erroneous implication or shifting of the burden of proof.

10

statements tainted the jury pool because it falsely implied that Marshall had an unfair advantage over the State and amounted to improper burden shifting. The State admits that "[t]his is not quite what the law is in this jurisdiction regarding discovery" but argues that the prosecutor was merely "explaining the 'policy' of the Travis County Prosecutor's Office," which is an "open file policy."

Marshall further complains about his attorney's failure to object to the trial court's refusal to allow Marshall to testify about his mental health background. After the State rested, Marshall testified on his own behalf. During cross-examination, the following exchange occurred:

> State: How soon after you stole the car were you actually safe?
>
> Marshall: I guess when I decided to go to that street because—I really don't want to bring this up because I don't want people to try to feel sorry for me, but I'm paranoid schizophrenic.
>
> State: I object as nonresponsive.
>
> Marshall's attorney: It is responsive, your Honor. He is answering the question directed to him.
>
> Court: What is the question, how far were you away when you felt you were safe?
>
> State: Yes.
>
> Court: That implies you need to tell us some distance or measurement of time.

During redirect by defense counsel, the following exchange took place:

> Counsel: You have been diagnosed as a paranoid schizophrenic?
>
> Marshall: Yes, sir.
>
> Counsel: How long ago were you diagnosed?

11

Marshall: I have been diagnosed since I was 12 years old up until the point last year—

State: Objection. Irrelevant, your Honor.

Court: It's sustained.

Counsel: No further questions.

Marshall argues on appeal that his mental health could have been an important defensive issue and "a basis for a variety of defenses, including insanity or mistake of fact—or could have been used as an imperfect defense that could have pulled Mr. Marshall's mens rea down from the required intentionally or knowingly to recklessly or negligently." He insists that there could have been no strategic reason for not seeking the admission of his mental health evidence.

To show ineffective assistance, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness and (2) that the deficient performance prejudiced the defendant's case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); *Blevins v. State*, 18 S.W.3d 266, 271 (Tex. App.—Austin 2000, no pet.). The defendant has the dual burdens of overcoming a strong presumption that counsel's performance fell within the range of reasonable professional assistance and presenting a record showing that counsel's performance was not based on sound trial strategy. *Thompson*, 9 S.W.3d at 813; *Blevins*, 18 S.W.3d at 271. If there is no evidentiary hearing on the issue of counsel's effectiveness, the defendant's burden is difficult to meet, and we will rarely find ineffective assistance.[5] *Blevins*, 18 S.W.3d at 271-72 (quoting *Thompson*, 9 S.W.3d at 813). We

_____

[5] In most direct appeals, the record is undeveloped and does not reflect counsel's strategies or motives, and seeking a writ of habeas corpus is the better means of complaining of ineffective assistance of counsel. *See Rylander v. State*, 101 S.W.3d 107, 110-11 (Tex. Crim. App. 2003).

evaluate the effectiveness of counsel's performance in its totality, rather than focusing on isolated acts or omissions, and from counsel's perspective at trial, rather than in hindsight. *Mayhue v. State*, 969 S.W.2d 503, 510 (Tex. App.—Austin 1998, no pet.).

In this case, Marshall's motion for new trial did not assert ineffective assistance, and the record is silent as to counsel's strategies. Viewed in whole, counsel's representation of Marshall was more than adequate—he conducted substantial voir dire of the potential jurors, making a Batson objection to one of the State's strikes, and actively participated in trial, cross-examining witnesses, calling Marshall in his own defense, appropriately objecting to questioning by the State, raising a successful objection related to whether Marshall was read his rights before being questioned, and presenting a professional closing argument.

With regard to the State's voir dire statements about a defendant's access to the State's file, the statement was made in passing and, as argued by the State, was not presented as part of the criminal law of Texas. Instead, it was presented as what the procedure is in Travis County. Even if it had been presented as an absolute rule in Texas, it is unlikely that the panelists would have absorbed that information as somehow shifting the burden of proof to Marshall, especially in light of the State's voir dire explanation that Marshall should be considered innocent until proven guilty, trial counsel's closing statement emphasizing the reasonable-doubt standard, and the court's charge, which clearly explains that the State bears the burden of proving its allegations.

As for counsel's brief attempt to introduce Marshall's psychological history to the jury during guilt/innocence, counsel managed to introduce Marshall's schizophrenia to the jury, although he was not allowed to explore it in detail. Although counsel could have attempted further

13

argument when the State objected to Marshall's testimony about his mental health, it is possible that counsel had already considered whether to argue that Marshall's schizophrenia rendered him insane when he took the vehicle or at least incapable of acting knowingly and decided against it.

Without a record to show what counsel knew and considered about Marshall's mental health, we cannot hold that his decision not to attempt to introduce more detailed information about Marshall's mental condition was such as to bring counsel's overall performance below a reasonable standard of effectiveness. *See Thompson*, 9 S.W.3d at 813; *Blevins*, 18 S.W.3d at 271; *Mayhue*, 969 S.W.2d at 510. Similarly, counsel's decision not to argue about and risk emphasizing the State's passing remark about what information a defendant may view from the State's file in a criminal trial cannot be considered to have rendered counsel ineffective. We overrule Marshall's fourth issue.

Finally, in his fifth issue, Marshall argues that his constitutional right to due process was violated because the trial court allowed him to appear in court and testify "while wearing leg braces for security purposes."[6] Trial counsel did not raise any complaints related to Marshall's restraints, and appellate counsel does not assert that trial counsel's failure to object amounted to ineffective assistance. Thus, the complaint is waived. *See* Tex. R. App. P. 33.1(a). However, even if the complaint had been preserved, although the trial court did not make findings that would justify

---

[6] On appeal, Marshall argues that he was "wearing a shackle," but the record does not reflect what Marshall wore on his leg. When Marshall began to testify, he was asked, "Kenric, when you walked up, you were hobbling. You are wearing a leg brace?" Marshall answered that he was, and counsel asked whether he had anything wrong with his legs. Marshall said, "No, sir," and counsel asked, "This is just a security thing that you wear and you are in custody at the jail; is that right?" Marshall said, "Yes, sir, I am." This testimony does not explain what it was Marshall wore and whether it was shackles or some other form of restraint. Further, it is not clear whether the restraint was visible, and the State argues that without proof of that visibility, there was no harm. However, because the jury was informed that Marshall was wearing a restraint or brace, it is fair to assume the jury was aware of it on some level.

14

the use of visible restraints, *see Deck v. Missouri*, 544 U.S. 622, 629 (2005), the error was harmless. *See Davis v. State*, 195 S.W.3d 311, 316-17 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (holding that non-structural constitutional error should be analyzed for harm under Tex. R. App. P. 44.2(a)); *see also* Tex. R. App. P. 44.2(a) (in conducting harm analysis, we should reverse unless we determine "beyond a reasonable doubt that the error did not contribute to the conviction").[7] Marshall admitted to having taken Eneda Espinoza's Jeep without her permission, and there was additional evidence to support a guilty verdict, including the Espinozas' testimony about Marshall's arrival at their apartment and the corresponding disappearance of the car keys and Mata's testimony that Marshall was arrested in the vehicle about six hours later. If error had been preserved, we would still conclude beyond a reasonable doubt that any sighting by the jury of the restraint or "leg brace" did not contribute to Marshall's conviction. *See* Tex. R. App. P. 44.2(a).

Having overruled Marshall's issues on appeal, we affirm the judgment of conviction.

_____

David Puryear, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed:   January 8, 2010

Do Not Publish

---

[7] Although improper restraint of a defendant is constitutional error, generally it is not structural error. *See Davis v. State*, 195 S.W.3d 311, 316 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (citing *Gray v. State*, 159 S.W.3d 95, 97 (Tex. Crim. App. 2005)) ("only federal constitutional errors can be structural and then only if the Supreme Court has labeled them so").